### THOMPSON and others v. MATTHEWS and others.

---

This court will not interfere to stay vehicles with heavy loads from passing over a public
wooden bridge: but must leave the parties to law.

Although the court interferes to prevent irreparable injury, still it does not do so where
damages can be ascertained at law, and compensation can be made in money.

---

October 13.      The defendants, Charles S. Matthews, Charles Woods and
1834.        James Hall, were ordered to show cause on this day why
             an injunction should not issue, restraining them " from trans-
Jurisdiction.
Bridge.      porting or causing to be transported across the bridge from
Injunction.  Harlæm across the Harlæm river any marble or stone in
             quantities exceeding at one time or in any one load the
             weight of two tons, until the further order of the court."

The bill in the cause was filed by Samuel M. Thompson,
Samuel Flewelling, William F. Coles and Isaac U. Coles, for

and in behalf of themselves and the other owners and pro-prietors of the bridge.

The act for building the bridge, entitled " An act for building a bridge across Harlæm river," passed 31st March, 1790, empowered Lewis Morris his heirs or assigns, at his and their expense, to build a bridge from Harlæm across Harlæm river to Morrisania, agreeable to the dimensions and directions in the act set forth; and that it should and might be lawful for the said Lewis Morris his heirs or as-signs, for and during the term of sixty years, to ask, demand and take, for the use of the said bridge, a toll not exceeding the rates limited in and by the said act. In another act of the legislature, passed 24 March, 1795, entitled " An act to enable John B. Coles to raise a dam across Harlæm river and to amend an act entitled an act for building ' a bridge across Harlæm river,' " after reciting the act above men-tioned and that the said Lewis Morris had assigned his right to build the said bridge and proposals had been made by John B. Coles to the assignees of the said Lewis Morris to raise a dam of stone for the purpose of erecting mills thereon and to be the foundation of the bridge aforesaid, it was, amongst other things, provided that the said John B. Coles his heirs and assigns should be &c. and they were thereby authorized to build a dam across Harlæm river, at such place as was or should be determined on by the as-signees of the said Lewis Morris in pursuance of the act therein recited and that such dam should be made of stone and so constructed as to be the foundation of the bridge and for collecting the water of the river for the use of grist and other mills.

The bill, after setting forth the above acts, stated that the bridge was afterwards and within the time limited erected and completed by the said John B. Coles in the manner and of the dimensions directed in and by the aforesaid acts; and that the same had ever since been maintained and preserv-ed in good and sufficient repair by the said John B. Coles or his assigns and who had ever since the erection thereof claimed and received the tolls authorized by the aforesaid acts and another act amendatory thereof. That the com-plainants were respectively and regularly the assigns of the

1834.

THOMPSON
v.
MATTHEWS.

said Lewis Morris and John B. Coles of certain shares or interests in the said bridge and, as such, respectively the absolute proprietors of the said shares in the said bridge and liable to their proportions of the expenses of the said bridge and of maintaining and preserving the same in good and sufficient repair and entitled to their shares of the tolls thereof in proportion to the amounts of their respective interests therein; and they were now, by the lawful appointment of the other proprietors of the said bridge, the directors thereof and, as such, had the undisputed control and management and were in receipt of the tolls for and on their own behalf and that of the said other proprietors. And they further showed, that the said bridge was originally built in a strong and substantial manner and had ever since been so maintained and preserved and had always afforded and still did afford a safe, commodious and suitable passage across the said river for all descriptions of vehicles containing loads of an ordinary or in any wise a reasonable weight. That, within a short time last past, the defendants, Charles S. Matthews, Charles Woods and James Hall, had engaged and were then engaged in business of quarrying marble at a quarry in the county of West Chester, distant about five miles from the said bridge, and of transporting the same by land across the said bridge to the city of New York and the said marble, when quarried, was transported across the said bridge in waggons of an extraordinary size and weight, drawn by five or six horses; that the marble transported in one of the said waggons at each time usually consisted of several pieces which were ordinarily of the aggregate weight of about four tons, independently of the weight of the waggon and horses, and that loads of marble of the weight above stated had, for some time past and then were, daily and sometimes several times a day transported across the said bridge by the said Charles S. Matthews, Charles Woods and Samuel Hall or by their orders or directions and the said loads sometimes exceeded the weight above stated, amounting, in one instance, independently of the waggon, to the weight of seven tons or thereabouts; that the said bridge, although built in a solid and substantial manner and calculated to afford an entirely safe means of transportation to

carts, waggons or other vehicles with loads of an ordinary or reasonable weight, was not built or intended for and was not a safe means of transportation for masses of the extra-ordinary weight above stated; that a load weighing two tons was far beyond the weight which was usually or often carried in a single vehicle and was the greatest weight which could be habitually transported across the said bridge with safety to it and to the load itself; that some of the timbers had already been broken or damaged by the aforesaid immense weights transported across it: and the complainants had every reason to believe and did believe that if the transportation of the aforesaid heavy loads across the said bridge was permitted and continued, the said bridge was daily in imminent danger of being broken down and thereby the property of the complainants and the other proprietors was not only in imminent danger of being destroyed or materially damaged, but the lives and property of other persons who were in the habit of crossing said bridge were constantly in danger. The bill further stated, that the toll receivable under the aforesaid acts on each of the said loads was nine pence. Also, that they, the complainants, had forbidden the defendants to transport such loads of immense weight across the bridge, but the latter had disregarded it and avowed their intentions of continuing such transportation, although the complainants charged and averred that the quarry of the defendants was distant but about a mile and a half from the Bronx-river-landing at West-farms, to which the marble might be carried and there transported without any difficulty by water to the city of New York. And also, that the said loads, as they consisted of several distinct pieces, might, with but slight trouble and inconvenience to the carriers thereof, be separated and carried across the said bridge at different times and in quantities which would not endanger its safety.

The defendants put in an affidavit, made by one of them (Charles S. Matthews) shewing, that he and the other defendants had contracted, under a penalty, to furnish and deliver marble for the basement of the new custom house in the city of New York from the quarry at Morrisania and had expended a large sum in purchasing teams, constructing

1834.

THOMPSON
v.
MATTHEWS.

roads and in other preparations; that the only direct route from the said quarry to the custom-house was across the bridge; that the navigation by the Bronx-river and through Hurl gate was unsafe; that the marble, if brought by water, would have to be loaded and unloaded six times, whereas, in bringing it by land, it was only necessary to have two removals; that the contractors would not be enabled to perfect their contract in time, if prevented from transporting the marble by land; that about five years back, the deponent was engaged in constructing the Baltimore and Ohio rail road near Elicott's mills, Maryland, and was then accustomed to see five and six horse teams haul daily, for the purpose of building bridges on the said rail road, heavier loads of stone across a wooden bridge over the Patapsco river at Elicott's mills than the defendants were accustomed to carry across the said bridge at Harlæm; that the marble procured for building purposes in Philadelphia, from the quarries in its vicinity, is carried across the bridges over the Schuylkill, which are constructed of wood, and the loads so carried are frequently from eight to ten tons each; and that any bridge of ordinary strength or ordinarily well constructed ought to be sufficient to sustain any load which had been brought across the said bridge by the defendants and much more.

Mr. *G. Griffin* for the complainants.

Mr. *D. Selden* for the defendants.

*November 3.*    THE VICE-CHANCELLOR:—The motion for an injunction cannot be granted.   The road across the bridge is undoubtedly a highway, though all persons and carriages passing must pay a toll: but, still, it is a public highway.   The affidavits in opposition take very much from the force of the allegations in the bill.   But this is a case in which the parties have legal rights.   The bridge is a public one.   If persons take improper loads and the bridge has been properly constructed, then the owners of it have a remedy by a special action on the case or in trespass for damage done; while, on the other hand, if passengers and their property should

sustain an injury by a breaking from ordinary loads, the owners must respond in damages. The law affords a reciprocal remedy in all such cases; and I shall leave the parties to their legal right.

It is true, this court has jurisdiction to prevent irreparable injury; but the injury is not irreparable, where damages, as here can be ascertained without difficulty, and compensation made in money. And I would observe, with respect to the tolls, that no equity arises from the circumstance of the complainants not being enabled to charge more than nine cents for a heavy load. This is a matter for the legislature; and the complainants will have an opportunity of applying for an amendatory act, raising their tolls, before the contract, which the defendants have entered into and which requires this large quantity of marble to be transported, shall have been completed.

Motion denied.