## THE STATE OF NEVADA, ex rel. W. M. BOARDMAN, Respondent, *v.* MYRON C. LAKE, Appellant.

Expiration of Franchise—Reverter to the Sovereign. At the expiration of a toll-road franchise, the control of such road reverts to the sovereign ; and in the absence of other special disposition, the free use of such road would be thereafter in the people.

Toll-Road with Expiring Franchise not to be Located as New Road. Sections 1 and 2 of the act to provide for the constructing and maintaining toll-roads (Stats. 1864–5, 254) apply only to new roads, and give no right to the owner of an old road, whose franchise is about expiring, to locate it as a new road.

Admissio Unius Exclusio Alterius. The provision of the act of March 8, 1865, in reference to the construction of toll-roads that "all franchises granted for toll-roads by the first legislature of this State may be located under the provisions of this act" (Stats. 1864–5, 254, Sec. 9), excludes the location thereunder of franchises granted by any other legislature.

Toll-Road a "Road in General Use by Traveling Public." The phrase "road or highway now in general use by the traveling public," as employed in the toll-road act of 1865 prohibiting interference therewith (Stats. 1864–5, 254, Sec. 12), includes toll roads—there being no difference in the sense of the statute between such roads and common highways.

Expired Bridge Franchise—Rights of Franchisee as Land-owner. The fact that the holder of an expired toll-road and bridge franchise has acquired the fee of the land on which the ends of the bridge rest and both sides thereof, does not give him any rights to a continuance of the franchise—the possession by the public of the easement of traveling the road being in no sense antagonistic to his possession of the title to the land.

Statutory Contract of Dedication by Acceptance of Franchise. The act of December 17, 1862, granting a toll-road franchise to Myron Lake (Stats. 1862, 19) and Lake's acceptance thereof, amounted to a solemn dedication by him, by way of statutory contract, of claims to any greater easement.

State ex rel. Boardman *v.* Lake.

No "UTAH TERRITORY JUDGE" IN NEVADA TERRITORY. Where it was claimed that a person assuming to act as probate judge of Carson County, Utah Territory, had granted a perpetuity of franchise in a toll-bridge in Nevada Territory : *Held*, that even if such claim of monstrous power were admitted, yet the pretended grant was void, because there was no Carson County, Utah Territory, after the erection of Nevada Territory ; and there consequently could not have been any probate judge, even *de facto*, of such county.

"OFFICER DE FACTO"—REQUISITES. To constitute an officer *de facto* there must be an office, with a place for its exercise and an incumbent under claim of right.

MERGER OF CLAIMS TO EASEMENT BY ACCEPTANCE OF FRANCHISE. Where Lake, claiming to own a perpetuity of franchise to collect toll on the Fuller bridge over the Truckee River, accepted the new toll-road franchise for ten years granted by act of December 17, 1862 (Stats. 1862, 19) : *Held*, that whatever rights he may have previously held were merged in the statutory contract contained in that act by his assent thereto.

TOLL-BRIDGE OVER NAVIGABLE RIVER MUST BE AUTHORIZED BY LEGISLATURE. A bridge over a navigable stream, such as the Fuller bridge over the Truckee River, can only be lawfully built or used for taking tolls by authority of the legislature.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The toll-road franchise, which was the subject of this action and in which the judgment of ouster was rendered in the court below, was granted to Myron Lake by act of December 17, 1862 (Stats. 1862, 19). It gave him the right to construct and maintain the road from the Junction House in Washoe County, running thence northerly and crossing the Truckee River at Fuller's bridge to the mouth of a ravine coming down from Pea Vine Mountain; thence following up said ravine to the base of said mountain, and thence in a north-westerly direction to the boundary line between Washoe and Lake Counties, and to collect tolls thereon for ten years. The same act and Lake's rights under it were under discussion before this Court in the case of *Lake* v. *The Virginia and Truckee Railroad Company*, 7 Nev. 294.

From the agreed statement of facts upon which the case was tried, it appeared among other things that " on March 7, 1861, under and by virtue of the laws of Utah Territory Fuller obtained and had a franchise and grant to build and maintain said bridge and charge and take tolls thereon, which franchise was without limit as to time, under which franchise

and grant said Fuller constructed said bridge"; that Lake purchased the franchise and grant and bridge from Fuller in June, 1861, and has since then maintained it "for the accommodation of the public and as a toll-bridge;" that "what was first erected into the Territory of Nevada on March 2, 1861, and now forms part of the State of Nevada, embraced all of what was formerly Carson County, Utah Territory; and that said grant to Fuller was situated in and to be exercised within said Carson County, Utah Territory." This proceeding was instituted by Mr. Boardman as district attorney of Washoe County.

Other facts are stated in the opinion.

*Haydon & Cain,* for Appellant.

I.   The Fuller franchise was granted by the county court of Carson County, Utah.   It did not, in granting the franchise to Fuller, exceed its jurisdiction.   Its officers, although not officers *de jure* were certainly officers *de facto,* and not usurpers without right or color of right to act; and their acts are valid as far as public rights are concerned.   *People* v. *Cook,* 14 Barb. 259; 4 Selden, 67; *People* v. *Collins,* 7 Johns. 549; 9 Johns. 135; *People* v. *Covert,* 1 Hill, 674; *Weeks* v. *Ellis,* 2 Barb. 320; *State* v. *Rhoades,* 6 Nev. 364.

II.   Lake is not bound by the provisions of the act of March 8, 1865, as he claims by a charter granted to him in 1862 by the Territory of Nevada; and to add burdens and conditions upon him that are not contained in the charter of 1862 would be impairing the obligations of his contract; for had he been informed in his charter that his bridge should at the expiration of ten years become the property of Washoe County he would in all probability not have accepted the franchise.   Coolidge Const. Lim. 279, and cases cited; *Dartmouth College* v. *Woodward,* 4 Wheat. 519; *Mills* v. *Williams,* 11 Ired. 561.

III.   It is claimed that Lake cannot locate his road under the act of 1865, because it is a public road.   We deny that it is a public road.   It is a road the public may travel by

paying toll, but not otherwise. Any person who can procure from the landholder the right of way may construct and maintain a road. It is only in respect to the right to collect toll on his road when constructed, that he must make application to the legislature for a franchise. *Bartram* v. *Central Turnpike Co.*, 25 Cal. 290. The proviso in the statute, that after so many years the county may buy the road, excludes every other manner in which the county can acquire it.

IV. By the best authorities it is held that upon the expiration of the franchise the property constitutes a trust fund for the payment of creditors and stockholders and does not revert to the grantor of the franchise. Angell & Ames on Corporations, Secs. 779 and 780. If anybody can construct a road and then apply for a franchise to collect toll, why cannot Lake, as he has done? It is in the power of the county commissioners to regulate his tolls. Stats. 1864–5, 254, Sec. 8.

*Ellis & King*, for Respondent.

I. The franchise granted to Lake by act of December 17, 1862, expired on December 17, 1872. What became of the toll-road, including the bridge over the Truckee and all bridges and culverts along the line of the road, after the expiration of the time for which Lake might exact tolls? It reverted to the sovereignty. This upon principle. But under our law (Stats. 1864–5, 254, Sec. 7) the ownership, with all the "rights and privileges," vested in the County of Washoe and was subject to the disposition of the county commissioners of that county; and they have not extended the time within which defendant may exact tolls.

II. Lake could not re-locate the same road, for traveling over which he has for ten years enjoyed the franchise of taking tolls, because it was a public highway, or road "in general use by the traveling public." No such road or highway can be located under the provisions of that act. See Sec. 12; *State ex rel. Buckley* v. *Curry*, 6 Nev. 75. It was a

public highway; an indictment would lie for obstructing it; a nuisance might be abated upon it; and parties punished for obstructing it. *Commonwealth* v. *Wilkinson*, 16 Pick. 175; Angell on Highways, Secs. 38–40.

III. Lake's location one day before the expiration of his franchise can make no difference; because at that time certainly the road he was trying to locate was with his own consent a public highway and he was taking toll upon it and had been for ten years. If his location is to be tolerated and upheld, there is nothing in the law to prevent the perpetuation of these franchises by the mere act of the parties in interest—thus making them monopolies in the odious sense of the term, and indirectly violating the constitution of the State. Const. Art. XV, Sec. 4.

IV. Admitting for the sake of argument that Lake has acquired the fee to some of the lands over which the road passes, and to the land upon either side of the stream upon which the bridge rests, still he has *dedicated* a right of way to the public; and he cannot deny that it is a highway. He cannot deny that he has made it a highway or road in general use by the traveling public so far as in his power he could. *Cincinnati* v. *Lessees of White*, 6 Peters, 435 ; 3 Kent, 589; Angell on Highways, Secs. 132, 142, 143, 144; *Daniels* v. *People*, 21 Ill. 439; *Hobbs* v. *Lowell*, 19 Pick. 405.

V. The Truckee River is a navigable stream. Ownership of the soil can give no private property in a bridge over a navigable stream, nor yet the right to take toll. *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44.

VI. The alleged Fuller franchise cannot protect defendant; because at the time of the alleged grant by the county judge to Fuller there was no Carson County, Utah Territory. The Territory of Nevada had been erected out of Carson County, Utah, by the Congress of the United States, March 2, 1861; and the alleged grant of franchise was upon March 9, 1861. There was, consequently, no judge of Carson County, Utah Territory, on March 9, 1861.

State ex rel. Boardman v. Lake.

By the Court, WHITMAN, C. J.:

This appeal is from a judgment of ouster touching a cer-- tain franchise claimed by the State to have lapsed. Lake, the appellant, in 1862 was authorized by the Territory of Nevada, through its legislature, to take toll for ten years on a certain road, which he was to construct according to the terms of the statute for that case made and provided. An important constituent part of that road was a bridge, known as Fuller's bridge, which Lake then held under purchase from Fuller, which was and is the point for toll collection for passage over or along the road.   Stats. 1862, 19.

That the legislature had the power to grant this franchise is not disputed; it is a necessary adjunct of the confessed duty of the legislatures of states and territories, by them- selves or others, as a matter of necessity to the public to construct roads and highways.   *Lake* v. *Virginia and Truckee R. R. Co.*, 7 Nev. 294.   The road was entirely built on the public lands of the United States; and it is unnecessary here to examine the question whether or no there is any differ- ence between the position of the federal government in this regard and that of any private landed proprietor, as the gov- ernment has by direct legislation assented to and granted a general easement.   "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."   U. S. Stat. 26 July, 1866; Brightley, 404, Sec. 104.

The case then stood in 1862 thus: Lake agreed with the territory to build and keep in good repair a road, of which the bridge mentioned was a principal component part; and the territory gave him the right to take toll for passage over and along that road for the term of ten years.   As a natural and legal conclusion, it would seem that at the expiration of such term the control of the road would revert to the sov- ereign which originally gave the right to a private party to construct it for the public use, which was an exercise of power inherent in and belonging only to the sovereign; and that no special disposition being made, the free use of such

road would be in the people thereafter. Acting evidently upon this supposition, too clear for argument, the legislature of the State of Nevada, successor in power to that of the territory, passed in 1864–5 an act which covers this case, in which among other things it is provided, "Upon the expiration or forfeiture of any toll-road franchise, the ownership with all the rights and privileges shall vest in the county or counties in which it is located; and the county commissioners may declare it a free highway, or they may collect tolls on such roads to keep them in good repair; provided, the county commissioners may extend the time of any expired franchises, so as to allow the owners thereof to collect tolls thereon for five years, subject to all provisions of this act." Stats. 1864–5, 256, Sec 7.

There has been no extension of time and the County of Washoe desires to take possession of this road; but appellant not recognizing the section quoted as applicable to his case, claims under sections one and two of the act referred to, to have on the sixteenth day of December, 1872, the day before the expiration of his franchise, located a new toll-road. Those sections are as follows:

"Sec. 1. Any person or persons desiring to construct and maintain a tol-lroad within one or more of the counties of this State, shall make, sign and acknowledge before some officer entitled to take acknowledgment of deeds, a certificate specifying—first, the name by which the same shall be known; and, second, the names of the places which shall constitute the termini of said road. Such certificate shall be accompanied with a plat of the route of the proposed road, and shall be recorded in the office of the county recorder of the county or counties within or through which such road is proposed to be located, and the record of such certificate and plat shall give constructive notice to all persons of the matters therein contained. The work of constructing such road shall be commenced within thirty days of the time of making the certificate above mentioned, and shall be continued with all reasonable dispatch until completed.

"Sec. 2.   On complying with the provisions of the preceding section, said person or persons shall have the right to construct, complete and maintain a toll-road over the route and between the termini mentioned in such certificate, and establish and collect such rates of toll thereon as he or they may deem proper for the term of ten years * * * * * *."

There is no question but that the formalities of the act have been complied with by appellant, and that he has located his claim for a toll-road upon the exact site of the one built by him under the act of 1862.   Passing the inevitable inference from the language cited, that new roads and only new roads were contemplated by the legislature, section 12 of the act uses these express words: "Sec 12.   No toll-road, constructed under the provisions of this act nor otherwise, shall interfere with any road or highway now in general. use by the traveling public or the emigration from the east."   And if this be not sufficient, section 9 speaks thus: "Sec. 9.   All franchises granted for toll-roads by the first legislature of this State may be located under the provisions of this act."

Upon the maxim *admissio unius, exclusio alterius,* the act which admits the location of toll-road franchises granted "by the first legislature of this State," excludes the location of any other; and it is not claimed that this is such franchise. It is said, however, notwithstanding this apparent clearness, that the right existed in Lake to locate a toll-road on the site of the old road, because that was not a "road or highway now in general use by the traveling public," for the sole reason that it was a toll-road.   Such is not the law.   "The only difference between this and a common highway is, that instead of being made at the public expense in the first instance it is authorized and laid out by public authority and made at the expense of individuals in the first instance, and the cost of construction and maintenance is reimbursed by a toll levied by public authority for the purpose.   Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other public highway."

*Commonwealth* v. *Wilkinson*, 16 Pick. 175; Angell on High-ways, Secs. 38–40; *State ex rel. Buckley* v. *Curry*, 6 Nev. 75.

Further objecting to surrender, appellant shows that since the date of the grant of 1862 he has acquired title in fee to the land on which the ends of the bridge rest and on both sides thereof, and also to a portion of the land on which the road is located. Precisely when this title was obtained does not appear, nor does it matter, as it is not necessary to resort to the principle of prescription in this case. Appellant's title can avail nothing in this contest; his possession of such title, and the possession by the public of the easement of traveling the road, are in no sense antagonistic. The public does not claim the fee, and it rests intact in Lake, subject only to the easement named.

This easement could have been raised in various ways, which need not here be specified, but was actually here fixed by the solemn dedication of appellant. No court has ever in its utmost strictness called for more conclusive evidence of dedication than is presented by the statutory contract of 1862 and the acts of appellant thereunder, making it absolute, fixed and executed. *Lade* v. *Shepherd*, 2 Stra. 1004; *Connehan* v. *Ford*, 9 Wis. 240; *Cincinnati* v. *Lessees of White*; 6 Peters, 435; *Hobbs* v. *Lowell*, 19 Pick. 405; *Daniels* v. *People*, 21 Ill. 439.

On the same principle appellant's claim to a perpetuity of franchise in the right to take toll on the bridge falls. This right it is asserted was granted to Fuller by one assuming to act as probate judge of Carson County, Territory of Utah, after the erection by Congress of the Territory of Nevada, within the boundaries of which was included the ground where this pretended judge was acting. Admitting for the nonce that such an officer had or under any conceivable circumstances could have had such a power, which on its face is monstrous, and that such franchise could stand after the adoption of the State constitution, which provides that "No perpetuities shall be allowed except for eleemosynary purposes" (Const. Art. XVI, Sec. 4.); yet it is evident that his action herein was void as without authority; for

this is not a case, as argued by counsel for appellant, of the action of an officer *de facto*, good as to third parties. To constitute an officer *de facto* there must be an office, with a place for its exercise, with an incumbent under claim of right. None of these requisites here appear. There was no Carson County, Territory of Utah, at the date of this act, consequently no probate court nor judge thereof · for such county. Again, as appellant owned the bridge and whatever rights Fuller had therein at the date of the contract of 1862, he merged all other claims in that contract by his assent thereto and his acts thereunder; and thus, if he had such other perpetual right, it is too late to assert it now.

The bridge has all along been treated simply as part and parcel of the toll-road; but if the point is insisted upon that this bridge is not such part and parcel, it does not help appellant's claim to the right to take toll thereon. The bridge is over a navigable stream, and consequently could only be lawfully built or used for toll taking by the authorization of the legislature. *Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44. No such present authority exists, as has been seen; so the State, even in that view, would have a right to the present action. Turned in any light, the position of appellant is untenable, and the district court properly so held. Its judgment is affirmed.