[No. 711.]

## THE STATE OF NEVADA ex rel. GEO. W. KEITH, Relator, v. THE DAYTON AND VIRGINIA TOLL-ROAD COMPANY, Respondent.

Construction of Statutes.—In arriving at the intention of the legislature, courts must look at the whole act, its object, scope and extent, and find out from the act itself, if possible, what the legislature meant, and the statute should be so construed as to avoid absurd results.

Idem—Section 3 of the Act of February 9, 1865, Unconstitutional.— The act of February 9, 1865 (Stat. 1864–5, 144), attempts to give a right to Birdsall and his associates to exercise corporate powers not provided for in the general law. It was an attempt upon the part of the legislature to grant a special privilege to one corporation that could not be enjoyed by any other, and is in violation of section 1, Article VIII, of the Constitution.

Franchise Grants Construed.—Any ambiguity in the terms of the grant of a franchise must be construed against the grantees, and in favor of the public.

Contract of Dedication by Acceptance of Franchise.—The act of February 9, 1865 (Stat. 1864–5, 144), granting a toll-road franchise to Fred-

erick Birdsall and his associates, and the acceptance thereof by the grantees, amounted to a contract to dedicate the road to the public at the expiration of the time mentioned in the franchise.

DEDICATION OF TOLL ROAD TO PUBLIC USE.—By allowing travelers to pass over the road, and by collecting tolls thereon, Birdsall and his associates dedicated the road to the public use.

THIS information in the nature of a *quo warranto* was originally brought in this Court to obtain a decree ousting the respondent from all right, privilege and franchise in and to a certain toll-road situate in Lyon County, Nevada.

The facts are stated in the opinion.

*George W. Keith and R. H. Taylor,* for Relator.

I. The passage of the act of February 9, 1865 (Stat. 1864-5, 144), and the acceptance by Birdsall and his associates of the franchises, constituted a contract between them and the State. (*Trustees Dartmouth College* v. *Woodward,* 4 Wheat. 624-644; *Fletcher* v. *Peck,* 6 Cranch, 136-139; *State of New Jersey* v. *Wilson,* 7 Cranch, 164; *Town of Pawlet* v. *Clark,* 9 Cranch, 292; *State* v. *Lake,* 8 Nev. 276.)

By the terms of this contract, Birdsall, his associates and assigns, were to have the franchise for ten years. But it is contended that at any time within the ten years named in the act, the owners of the road might, under the authority of the third section of the act, incorporate under the general incorporation laws of the State, and thus extend the franchise fifty years. If this third section means anything, it means: First, that the incorporation must be created under general laws then in force; and second, that the corporation shall exist for no longer than the time mentioned in section 1, and if there be any ambiguity in these respects it should be construed in favor of the public and against the grantees. (Angell on Highways, Secs. 357, 368; *State* v. *Virginia and Truckee R. R.,* 7 Nev. 299.) We urge, therefore, that the third and first sections of the act should be construed together; and that the third section embodied into the act the general incorporation laws, with the *proviso* that is contained in the first section, as to the duration of

the existence of the corporation, should such corporation be formed. The State having granted, and Birdsall and his associates having accepted the franchise for the period of ten years and no longer, no act of the grantees could enlarge the franchise. Birdsall and his associates could not convey to respondent any greater right than that which they acquired from the State. It has always been the policy of the State to so limit road and bridge franchises that within a reasonable time they should become the property of the public. All the *special* franchises granted by the legislature of the Territory of Nevada and the State of Nevada heretofore, have been limited to a few years; in no instance, we believe, extending beyond ten years. The *general* act in relation to the construction and maintenance of toll-roads (Stat. 1864–5, 254) limits the time to ten years in the first instance, and to fifteen years *absolutely*. If a corporation may be formed under the general incorporation act, to construct and maintain toll-roads, the right *to collect tolls* can be obtained only by a compliance with the provisions of the act approved March 8, 1865. (Stat. 1864–5, 254.) At the time of the formation of the corporation defendant, a compliance with this act was, and still is, the only way in which there can be acquired a right to collect tolls on roads in this State. Since the passage of this act, the ground of a special franchise for that purpose by the legislature would be repugnant to sections 20 and 21 of Article IV of the Constitution of the State.

The franchise under consideration, by its terms, expired February 9, 1875. At that time the ownership of that portion of respondent's road lying in Lyon County vested in said county, and the right of Birdsall, his associates and assigns, to collect tolls ceased. (Stat. 1864–5, 256, Sec. 7; *State* v. *Lake*, 8 Nev. 276; *State* v. *Maine*, 27 Conn. 644.)

.II. When Birdsall and his associates accepted the franchise and commenced to exercise the rights thereby granted, they dedicated the road to the public uses. (*State* v. *Lake*, 8 Nev. 276; *State* v. *Maine*, 27 Conn. 644.)

A toll-road is a public highway. There can be no such

thing in this country as a private toll-road. (Angell on Highways, Sec. 9; *Commonwealth* v. *Wilkinson*, 16 Pick. 175, and *State* v. *Maine, supra.*)

In reply to respondent's brief, counsel cite the following additional authorities: *Taylor* v. *Palmer*, 31 Cal. 240; *City of San Francisco* v. *Kelsey*, 5 Cal. 169; *People* v. *White*, 34 Cal. 183; *Burnham* v. *Hays*, 3 Cal. 115; *People* v. *Wells*, 11 Cal. 329; *Hess* v. *Pegg*, 7 Nev. 26.

*Lewis & Deal*, for Respondent.

I. It is admitted in this case that the road in question was built and completed prior to the passage of the act authorizing the collection of tolls; that the defendant is legally incorporated, this being a fact alleged in the petition as well as in the answer, and that the rates were duly fixed by the county commissioners. It must also be borne in mind by the court, that there was no attempt at showing that the road was ever opened to the public, or used in any way other than as a private road, prior to the time the franchise was granted to Birdsall and his associates.

II. We contend that if it be possible to sustain two acts by interpreting them so that there will be no conflict, it must be done; that the act giving us the right to collect tolls for ten years, can be construed so that there will be no conflict between it and the right which we claim as a corporation to collect for the period of fifty years; that by the interpretation placed upon the acts by the relator, the conflict is irreconcilable, and therefore should not be adopted; that the general incorporation act, by means of section 3 of our act, becomes a part of the latter, and that it would necessarily follow the first section of our act. If, therefore, there be any conflict between the general incorporation law and the first section of the Birdsall act, that first section must give way, and consequently Birdsall and his associates, instead of being limited to ten, were given the right to collect tolls for fifty years; that if the limitation of ten years was intended to apply to the corporation to be created by Birdsall and others, then such limitation was unconstitutional, and

consequently cannot be held to be a limitation upon the right of the corporation; that under the third section of the Birdsall act, he and his associates could incorporate at any time before the expiration of their franchise; that they did not incorporate until there was an act in force clearly authorizing a corporation for toll-road purposes; they were therefore authorized to incorporate independent of section 3 of the Birdsall act; that the road was a private road prior to the act granting the franchise, and always has been so; that the act of Congress of July, 1866, confirmed the defendant's title to the road; and as the road act authorizing the commissioners to claim and continue toll-roads was adopted after our rights attached to the private road, that act does not affect the defendant; so it may still claim it as a private road, even if it cannot collect tolls.

In support of these views, which were discussed at length, counsel cite the following authorities: Sedgwick on Statutory Construction, 126, 127; 41 Mo. 24; 1 Black. 470; 22 Cal. 432; Sedgwick on Stat. Const. 49, 50, 107; *Hall* v. *Bray*, 51 Mo. 288; *State* v. *Tucker*, 46 Ind. 355; 1 Comp L. 3392; *Kennedy & Keating* v. *Chollar-Potosi Co.*, 3 Nev. 374; *State* v. *Mudd*, 3 Foster (N. H.) 327; Washburn on Easements, Secs. 133, 180; 24 Pick. 71; 5 Selden, 256.

By the Court, Hawley, C. J.:

On the 9th day of February, 1865, the legislature passed an act granting to Frederick Birdsall and his associates a franchise to collect such tolls as the commissioners of Storey and Lyon Counties might fix, for the space of ten years after the passage of said act, upon the road known as the Dayton, Virginia and Carson Toll Road. (Stat. 1864–5, 144.)

The road was built prior to the passage of said act over and upon the public land of the United States. Respondent was incorporated January 15, 1874, and is the successor in interest of said Birdsall and his associates. It is claimed by the relator that the franchise, granted by said act, lapsed on the 9th day of February, 1875, and that by

the provisions of section seven of "An act to provide for constructing and maintaining toll-roads and bridges in the State of Nevada, approved March 8, 1865" (Stat. 1864–5, 254), the ownership of said road then vested in the counties where the road is located.

Respondent, in order to avoid the plain provisions of the statute, asserts a right under section three of the act of February 9, which provides that "the owners of said road may incorporate the same under the general incorporation laws of this State," and argues that Birdsall and his associates could under this section incorporate, and that by so doing, notwithstanding the provisions of section one of said act limiting the franchise to ten years, they were given the right to collect toll for fifty years from the time of their incorporation, that being the time specified in the general law for the existence of the corporation. Can this position be sustained by any rule of law or logical course of reasoning? We think not. In arriving at the intention of the legislature we must look at the whole act, its object, scope and extent, and find out, from the act itself if possible, what the legislature meant, and the statute should be so construed as to avoid absurd results. The object of the law was to give a franchise to the parties therein named to collect tolls upon a certain road for a fixed period of time.

Why was section three inserted in the act?

The general law providing for the formation of corporations in existence at the time of the passage of the act in question was limited to "manufacturing, mining, milling, ditching, mechanical, chemical, building and farming purposes." (Stat. 1864, 49.) It did not authorize an incorporation for the purpose of constructing or maintaining toll-roads. In considering the entire act with reference to the then existing laws it seems to us quite clear that it was the intention of the legislature to give to Birdsall and his associates special authority to create and form a corporation to conduct and carry on the business of collecting tolls, and under their corporate name to possess and enjoy the rights,

franchises and immunities of the toll-road mentioned in section one. If it had been the intention to extend the franchise for fifty years more, as claimed by respondent, the legislature would certainly have inserted a proviso to the effect that if the owners of said road did incorporate, then the franchise granted by the first section should be extended for the full time of the existence of said incorporation. In the absence of such a clause it is evident that it was not the intention to extend the time of the franchise beyond the time specified in section one. It does not necessarily follow that because the power was given to incorporate, that the time should be specified for fifty years. It is true that the time of the existence of any incorporation under the general law was not restricted under fifty years, but the existence of the corporation was dependent upon the time specified in the articles of incorporation, and any number of years the incorporators saw fit to mention not exceeding fifty might be inserted. If the legislature had the power, it was unnecessary to limit the time of the existence of this corporation to ten years, because the first section of the act had already limited the business of collecting tolls to ten years. If Birdsall and his associates incorporated, and if section three has any validity under the Constitution, they could only incorporate to conduct and carry on the business which was authorized by section one. The converse of this proposition would lead to absurd results. But viewed from any legal standpoint of construction, section three is clearly unconstitutional. In our judgment it attempts to give a right to Birdsall and his associates to exercise corporate powers not provided for in the general law. It was an attempt upon the part of the legislature to grant a special privilege to one corporation that could not under the then existing laws be enjoyed by any other, and is clearly in violation of section one, article eight, of the Constitution, which provides that "the legislature shall pass no special act in any manner relating to corporate powers except for municipal purposes."

Respondent did not incorporate until the general law was

changed so as to include any "business or commerce."
(Stat. 1869, 95.)   Conceding for argument's sake that this
law authorized an incorporation for the business of collect-
ing tolls and maintaining toll-roads, yet it does not give any
right to respondent to collect tolls after the expiration of
the franchise granted by the act of February 9, 1865.   The
right to collect tolls was given by said act and is derived
entirely from it.   No other law then in existence authorized
the collection of tolls upon said road and no law has since
been passed extending the franchise, and no extension of
time has been granted or allowed by the board of county
commissioners of Lyon County under section seven of the
act of March 8, 1865.

Under an almost universal rule of construction, the act
under review must be considered and treated as an agree-
ment between Birdsall and his associates and the public,
the terms of which are expressed in the statute.   If there
is any ambiguity in the language used, the act must be con-
strued against the grantees and in favor of the public.   The
grantees take nothing by implication and can claim nothing
but what is clearly given them by the law.   (Angell on
Highways, Sec. 368; *Lake* v. *Virginia and Truckee R. R. Co.*,
7 Nev. 299, and authorities there cited.)

The fact, claimed by respondent, that the road was pri-
vate property at the time of the passage of the act, and that
no person could travel over it without permission of the
owners, does not destroy the statutory contract to dedicate
the road to the public in consideration of the privilege of
collecting tolls thereon for the period of ten years.   By al-
lowing travelers to pass over the road and by collecting
tolls thereon they dedicated their road to the public use,
and the general public have acquired such an easement to
travel over the road as precludes the owners from asserting
any ownership inconsistent with such use.   (Angell on
Highways, Sec. 142; *Ogle* v. *P. W. and B. R. R. Co.*, 3
Houston's Del. 272; *City of Shreveport* v. *Walpole*, 22 La.
Ann. 526; *State ex rel. Boardman* v. *Lake*, 8 Nev. 284, and
authorities there cited.)

Judgment must be entered against respondent, ousting it from the right, privilege and franchise of demanding, collecting or receiving tolls upon that portion of the road mentioned in the act of February 9, 1865, which is situate within the county of Lyon, State of Nevada.

It is so ordered.