22   429
e29   441

THE VIRGINIA CAÑON TOLL ROAD COMPANY v. THE PEO-
PLE EX REL. VIVIAN.

1. TOLL ROADS—FRANCHISE.

The power of collecting tolls is a part of the sovereignty of the state,
which the legislature may delegate in return for a supposed public
good with such restrictions as it may see fit to impose, and the
grantee takes subject to all such limitations.

2. SAME—SALE OF FRANCHISE.

The primary franchise of an incorporated company to be a corporation
cannot be alienated without legislative permission; yet, it seems
that the franchise of a toll road company to exact tolls may be
transferred in connection with an assignment of the tangible prop-
erty of the corporation when that property can be fully enjoyed by
the grantee only by the exercise of such secondary franchise.

3. SAME.

If it be assumed that a toll road company may alienate all its tangible
property and also the franchise to collect tolls, whatever limita-
tions or burdens existed against it will still exist against its grantee.

4. SAME.

A toll road company is incapable of exercising its franchise to collect
toll after the expiration of the term of its corporate existence ;
neither can it by conveyance, made during its corporate life, im-
part to another corporation or to a natural person the power to
continue the exercise of such franchise after that franchise itself
has expired by operation of law.

5. SAME.

A toll road company was incorporated for the purpose of acquiring, and it
did acquire, so far as they could be alienated, all the rights, proper-
ties and franchises of another road company, which had constructed
a road, but the corporate existence of which was about to expire.
*Held,* that the latter company could not lawfully collect tolls for
travel upon the road after the expiration of the term of its grant-
or's corporate existence.

6. SAME—HIGHWAY.

When the right to collect tolls ceases with the expiration of the term
of the corporation constructing the road, the public may use the
highway without charge.

*Error to the District Court of Clear Creek County.*

FOR the purpose of constructing a wagon toll road from
Idaho Springs in Clear Creek county, Colorado, along Vir-

ginia Cañon to the dividing line between Clear Creek and Gilpin counties, there was organized, on the 20th of December, 1865, the Virginia Cañon *Wagon Road* Company, under the provisions of an act of the territory of Colorado concerning corporations, approved March 11, 1864.

Said company constructed the road, and from its completion until the 22d of October, 1881, maintained and operated the same as a toll road and collected the tolls, as prescribed by law.

Under this act the term of existence of the company was for twenty years from the date of its incorporation. On the 22d day of October, 1881, the plaintiff in error herein, The Virginia Cañon *Toll Road* Company, was incorporated under the provisions of an act of the legislature of the state of Colorado concerning corporations, approved March 14, 1877, which limits the term of its existence to twenty years. This latter company was incorporated for the purpose of acquiring (and it did acquire, so far as they could be alienated) all the rights, properties and franchises of said first corporation.

The plaintiff in error was not organized to build, nor did it construct, a road between the points named in its articles of incorporation, but acquired from the Wagon Road Company, and operated, the toll road which was located and built by the first company, and appropriated the same to its own use ; and ever since the date of incorporation of the Toll Road Company it has used and operated the road built by the Wagon Road Company, and has erected and maintained a toll gate thereon, and has collected toll, and still maintains its toll gate on said road and proposes to collect toll, as it is said, without any right or authority.

The People, etc., on the relation of Vivian, through the act of the district attorney of the proper judicial district, filed in the district court of Clear Creek county this suit in the nature of a *quo warranto*, asking that the defendant Toll Road Company (plaintiff in error here) be excluded from

the exercise of its assumed franchise to collect tolls, and that the corporation be dissolved.

The defendant filed its demurrer, on the ground that the complaint did not state facts sufficient to constitute a cause of action, which demurrer was overruled; and upon the defendant's announcement that it would stand by the demurrer, the court entered a decree excluding the defendant company from the further exercise of any of its alleged rights under its charter, and adjudging that the defendant corporation be dissolved.

From this judgment the defendant comes by writ of error to this court, and the errors assigned are the ruling of the court upon the demurrer, and the entering of this judgment.

Mr. I. N. Smith, Mr. C. C. Post, Messrs. Teller, Orahood & Morgan, and Mr. W. W. Story, *amicus curiæ*, for plaintiff in error.

Mr. A. D. Bullis, for defendant in error.

Mr. Justice Campbell delivered the opinion of the court.

A toll road is a public highway, differing from ordinary public highways chiefly in this, that the cost of its construction in the first instance is borne by individuals, or by a corporation, having authority from the state to build it, and further in the right of the public to use the road after its completion, subject only to the payment of toll. The acceptance by the corporation of the franchise to construct the road and the operation thereof constitute a dedication of the same as a public highway. The right of a corporation, or of an individual, to exact tolls is not of common right, and, in this country, does not exist in the absence of a grant from the legislature. This power of collecting tolls is a part of the sovereign power of the state, which the legislature may delegate in return for a supposed public good, and the grant of the power may be conferred with any restrictions which the

legislature may see fit to impose, and the grantee takes subject to all such limitations, and the grant of the right is the equivalent of, or compensation for, the cost of building and maintaining the road.  2 Waterman on Corporations, sec. 419; Angell & Ames on Corps., sec. 4; *Commonwealth v. Wilkinson*, 16 Pick. 175; *Wood et al. v. Truckee Turnpike Co.*, 24 Cal. 474; *Craig v. The People*, 47 Ill. 487.

If the defendant company have the power to exact tolls, it got that power either as the result of a purchase of such franchise from the Wagon Road Company in connection with a purchase of the latter's tangible property, or such power was given to the defendant as necessarily incident to its own organization as a corporation, and as a result of its act of incorporating.

While the primary franchise of an incorporated company to be a corporation can never be alienated without legislative permission, yet what are termed the " secondary franchises " of a corporation, such as the right of a railroad company to collect fares, or of a toll road company to exact tolls, for services performed, may, under some of the authorities, be transferred in connection with an assignment of the tangible property of the corporation, when that property can be fully enjoyed by the grantee only by an exercise of such secondary franchise.  *Miners' Ditch Co. v. Zellerbach et al.*, 37 Cal. 543; s. c., 99 Am. Dec. 300; *State ex rel. v. Irrigating Co.*, 40 Kan. 96.

. It has been held, however, and in the Kansas case cited it was assumed, that without express legislative consent a corporation charged with the performance of public duties, or possessing powers which are given in return for some public good, cannot dispossess itself of those franchises, or of that property, necessary to enable it to discharge those duties. 2 Morawetz on Corps., secs. 924, *et seq.*, 930, 934; 1 Beach on Private Corps., sec. 362, *et seq.*; 2 Beach, sec. 389, *et seq.*; 4 Thompson on Corps., secs. 5355, 5373, 5374.

But if we assume that the Wagon Road Company might alien its franchise to collect tolls, and that the defendant

Toll Road Company now has, by purchase, all the tangible property of the former company, and also the franchise to exact toll which its grantor possessed, it must logically follow that, as the result of such acquisition, the grantee company has only the same powers which its grantor had, and no different or enlarged powers. In other words, whatever limitations or burdens existed against the grantor, still exist as against the grantee. The inquiry then is, what is the extent of the powers of the Wagon Road Company?

Under the territorial act of incorporation the Wagon Road Company's existence as a corporation expired in 1885. It was then legally dissolved as a corporation, and was thereafter incapable of exercising its franchise to collect toll. Neither could it, by a conveyance made during its corporate life, impart to any other corporation, or to a natural person, the power to continue the exercise of its corporate franchise after that franchise itself expired by limitation of law. The limitation in the general incorporation act of the territory of twenty years as the term of existence of the company operates in the same way as though by express words the exercise of the power to collect tolls was limited to twenty years. Elliott on Roads & Streets, 83; 27 Am. & Eng. Ency. of Law, 324, *et seq.*

But plaintiff in error insists that its property is valuable only in case it has the right to collect tolls; and, therefore, that such use of its property is, of itself, a property right, and unless there is some way whereby it can enjoy this use of its property after its corporate life is ended, practically it is deprived of its property without due process of law.

The argument proceeds upon a false premise. In the eye of the law, the toll road was dedicated by its owner as a public highway. While in one case (*People v. N. & S. P. R. Co.*, 86 N. Y. 1) it was held that if a private corporation owns the fee on which the road exists, the public does not acquire the right to use the way upon the expiration of the charter (which decision has been said to be contrary to the weight of authority,—Elliott on Roads & Streets, 54), yet where the

corporation has only an easement, as is the case here, and not the fee, the authorities are unanimous that upon the expiration of the charter the way becomes a public way.  27 Am. & Eng. Ency. of Law, *supra*, and cases cited.

Once a highway, always a highway, until vacated by the proper authorities, is the general rule.  The easement in, or the right to pass over, the roadway which the corporation laid out, belongs to the public, subject to the necessity of paying tolls only for such length of time as the corporation exists.  The contract between the state and the corporation contained in the charter, or resulting from the act of incorporation under the general laws, is that the corporation shall possess during its corporate life the power of collecting tolls, which is regarded as a compensation, and a full equivalent, for the cost of construction and operating the road.  The corporation accepts the grant subject to this condition, and supposing, at least, that the business will prove remunerative.

This right to collect tolls not belonging to the corporation either as a matter of common right, or for an indefinite time, as a grant from the legislature, but for such length of time as the corporation itself is permitted to do business, remains the property of the company only until its dissolution or expiration of its charter, and, after that, is neither the property of the corporation nor of its stockholders, but reverts to the state.  This property does not, therefore, like the tangible property of a corporation, pass to its stockholders, subject to the rights of the creditors, for the obvious reason that the franchise as originally granted was limited in time to twenty years.

It is no answer to this proposition to say that the corporation is deprived of that which is valuable, for the corporation is deprived only of that which, by implication, it agreed to relinquish upon the termination of its corporate existence. If the rule were otherwise, the result would be that a toll road company which, under our statute, is limited to twenty years, might indefinitely prolong its existence and perpetuate its franchises, contrary to the express provision of section 11

of article 2 of our bill of rights, which prohibits the irrevocable grant of franchises by the general assembly; for just before the termination of its corporate existence, its stockholders could (as was attempted to be done here) form a new corporation, to which the property and franchise of the old one would be transferred, and the business continued, and when this second corporation was about to expire, a third one could, in like manner, be formed, and so on for all time; and thus indirectly the legislative will could be thwarted, and the constitution with impunity evaded, and the perpetuation of franchises be accomplished, and a monopoly established, contrary to the letter and spirit of our law.

The authorities, so far as called to our attention or as we have examined them, are in harmony with this conclusion. In addition to those already cited, they are: *Douglas v. Turnpike Co.*, 22 Md. 219; *State v. Maine*, 27 Conn. 641; *Turnpike Co. v. Illinois*, 96 U. S. 63; *People ex rel. v. Anderson, etc., R. Co.*, 76 Cal. 190; *People v. Davidson*, 79 Cal. 166; *State v. Lake*, 8 Nev. 276; *State v. Toll Road Co.*, 10 Nev. 155; *Pittsburg, etc., R. R. Co. v. Commonwealth*, 104 Pa. St. 583; *McMullin v. Leitch*, 83 Cal. 239; *Blood v. Woods*, 95 Cal. 78; *State ex rel. v. Lawrence Bridge Co.*, 22 Kan. 438.

The decisions in some of the California cases, and in the one from 10th Nevada, seem to have been predicated, in a measure, upon a statute, but in the other cases the decisions are based upon the general doctrine, and we apprehend that the statute is but declaratory of what the general doctrine is. The case from Kansas is, in its facts, a more extreme case than the one at bar, but in its main features is directly in point with this.

But it is contended, if this franchise was not obtained from the Wagon Road Company, that the defendant Toll Road Company, as a result of its own act of incorporation, has the right to collect tolls upon this purchased road for and during the term of its own existence. It is conceded that the defendant is incorporated, not under the provisions of subhead 4 of division 2 of chapter 19, General Statutes (1883), concern-

ing corporations, but under section 238 of division 1 of that chapter. Under the former, which is specially applicable to toll road companies, the grant to exact tolls, upon certain specified conditions, is conferred in express terms only upon corporations organized to *construct*, and which do *construct*, toll roads. Under the latter, which contemplates corporations in general, or ordinary business or trading companies, corporations formed " for the purpose of carrying on any lawful business " " may have and exercise all the powers necessary and requisite to carry into effect the objects for which they may be formed."

The defendant, as stated, having been formed to purchase and operate, not to construct, a toll road, the argument is this : To buy and operate a toll road is the carrying on of a lawful business ; the object sought can be accomplished only by the exercise of the right to collect tolls ; therefore the defendant company has the implied power to exact tolls in order to effectuate the object of its creation.

This is plausible, but not sound, and assumes the very proposition in question, viz., that the operation of the road, and the collection of tolls therefrom, after the expiration of the term of the constructing company, are lawful. The right to collect tolls, as we have seen, does not exist as a common right. It is conferred by the legislature in return for some supposed public good. The laying out of a highway by a private corporation at its own expense, and the opening up of the same for travel, where no such facilities existed before, subserve a public good ; and the payment of tolls by the public for the privilege of passing thereover is only another form, or rather is in lieu, of taxation for maintaining a highway. But where the right to collect tolls ceases with the expiration of the term of the corporation constructing the road, the public then may use the highway without charge. It follows that not only is no public good subserved by permitting another corporation thereafter to collect tolls, but the rights of the public are seriously interfered with.

This business of operating a toll road is not like that of an

ordinary mercantile corporation organized under our laws, which merely transacts a business that may be engaged in, as a matter of right, by any natural person, or private corporation organized therefor, and which involves no function of a public nature. With respect to corporations of this class, there is no reason why such private business may not be indefinitely extended by corporations successively formed at stated periods of time to assume and carry on the business of previously existing corporations.

While it may safely be conceded that the organization and carrying on of its business by the defendant were lawful, in the sense that it might collect tolls so long as the company which constructed the road might do so, yet the collecting of tolls thereafter was not lawful. *State ex rel. v. Beck*, 81 Ind. 500. The concluding part of section 304, which grants the franchise to a company building a toll road, is a proviso which prohibits the company from locating its road upon a previously existing toll road or highway then used as such. True, it has been held that a company organized to build a road over a given route has the implied power to purchase a road already built over the same route, or a road subsequently built thereon (5 Thompson on Corps., sec. 5941; *Branch v. Jesup*, 106 U. S. 468; *Camden & Atl. R. R. Co. v. May's Landing, etc., R. R. Co.*, 48 N. J. Law, 530; *State ex rel. v. Hannibal, etc., R. Co.*, 37 Mo. App. 496), upon the principle that the power to build includes the power to buy, although other authorities question the application of this rule (5 Thompson on Corps., sec. 5904; *Green, Treas., etc., v. Beeson*, 31 Ind. 7). Still, the power to buy does not include the power to build.

But if the defendant company had been organized to construct a toll road, it could not, under the proviso, have located it longitudinally over any previously existing road; much less could the defendant, formed merely to buy, in effect indirectly and practically accomplish that purpose. We must assume that by this proviso the legislature intended something. The contention that it is but a limitation to the exercise of the right of eminent domain, and prohibits the

taking from an existing corporation of property already by it dedicated to some public use, and vesting the same in a corporation subsequently formed to carry out the same or a similar purpose, is not tenable; for no such right exists in the absence of legislative permission expressly given or arising by necessary implication from some express power. Mills on Em. Domain, secs. 45, 46, 47; Lewis on Em. Domain, secs. 266–271; 5 Thompson on Corps., sec. 5906.

The object of this provision is in harmony with the evident general intent of the legislature to prevent just what is attempted by the defendant company, viz., to perpetuate the right of collecting tolls upon an existing toll road after the expiration of the time originally fixed by the legislature for the corporate existence of the company that built the road.

It is significant in this connection that the legislature has made no provision for the renewal of the corporate life of toll road companies, or provided for the transfer of their franchises or property to another corporation. Life insurance companies organized under the statutes of our state have perpetual succession (Gen. Stats. 1883, sec. 238); railroad companies may continue to exercise their franchises for the period of fifty years, with a provision for their renewal (Gen. Stats. 1883, sec. 334); ditch and reservoir companies may have their term of incorporation continued and extended for twenty years beyond the original term (Session Laws 1891, 96); but there is no provision of any kind for the renewal of the corporate existence of a toll road company; and this, we think, is another indication of the legislative intention not to allow such companies, themselves, or by their grantees, to exercise this sovereign power beyond the original term of twenty years, as well as a legislative declaration that the power to continue the exercise of such franchise ceases when corporate existence ceases, unless there is a provision for renewal.

The plaintiff in error, moreover, insists that the state is estopped to question its right to exercise this franchise because taxes upon its property have been assessed and col-

lected since the expiration of the old charter, through which the state has received some benefit.   To this we answer, *first*, that there is nothing in the record to show that any taxes have been levied or paid by the plaintiff in error either upon its tangible property or upon its franchise as distinct therefrom ; *second*, the prolongation of the corporate existence may not be effected by the levy by the state or county officers of a tax, which the corporation voluntarily pays.   If such were the law, mere administrative officers could successfully abrogate the constitution, nullify legislative enactments, and confer and extend special privileges and franchises which the legislative department of government itself by general law would be unable to do.

For the foregoing reasons, it follows that the judgment of the district court should be affirmed, and it is so ordered.

*Affirmed.*