### GIBSON v. ROGERS COUNTY ex rel. HALL, Co. Atty., et al.

Nos. 9442, 9443—Opinion Filed June 3, 1919.

(Syllabus by the Court.)

1. **Turnpikes and Toll Roads—Approval of Report and Survey—Appeal—Order of New Survey.**

Where the county commissioners have approved the report and survey of the road commissioners appointed by them, and granted a franchise for a toll road, and certain taxpayers appeal therefrom, and the case is tried de novo in the district court, and the taxpayers raise only jurisdictional questions, but do not object to the route of said road, and it appears that the road commissioners have complied with the law in filing their survey and report with the county commissioners, it is error for the trial court to refuse to accept said report, and to order a new survey, unless it appears from the evidence that there is a more feasible route, or unless it appears that the route is not sufficiently defined, or the survey not complete in some particular.

2. **Same—Pleadings—Evidence.**

The judgment of the trial court was not in accord with the pleadings, and was against the clear weight of the evidence.

Error from District Court, Rogers County; W. J. Campbell, Judge.

Proceedings by Rogers county, Okla., on relation of William M. Hall, county attorney, and the board of county commissioners of Rogers county, to vacate orders and agreements made and entered into by and between the board of county commissioners granting to Kelly F. Gibson a franchise to operate and maintain a toll road. Report of road commissioners selected to lay out the toll road rejected, and cause remanded to board of county commissioners, with directions, and Gibson brings error. Reversed and remanded, with instructions to dismiss the appeal.

Carroll & Mason, C. H. Rosenstein, and A. B. Honnold, for plaintiff in error.

W. H. Lucas, Mack R. Shanks, Co. Atty. of Rogers County, and D. M. Battenfield, Asst. Co. Atty., for defendants in error.

McNEILL, J. On November 9, 1916, Kelly F. Gibson submitted to the board of county commissioners of Rogers county a proposition for the construction and maintenance of a toll road from Chelsea to Claremore. The board of county commissioners appointed two road commissioners to act with another to be appointed by Gibson, and these three commissioners were instructed to lay out the proposed toll road and report their findings to the county commissioners and file a map giving the general course and width of the road. On the 11th day of November, 1916, these commissioners made their report, filed a map showing the course and location of the proposed road, and made their recommendations thereto. This report was approved by the board of county commissioners, and a resolution was adopted granting to Kelly F. Gibson and his heirs the right of franchise to purchase, construct, operate, and maintain a toll over the land and route described in the survey and map filed with the county commissioners and giving him the right to charge toll in the operation of said road.

Thereafter an appeal was taken by the county attorney upon a petition of about 70 taxpayers to the district court. In the district court the county attorney, being the appellant, filed his motion to set aside and hold for naught the resolutions, orders, and agreements made and entered into by and between the board of county commissioners granting to Kelly F. Gibson the franchise to

operate and maintain the above toll road, and for reasons therefor set forth:

First. The county commissioners did not have jurisdiction to allow and grant a franchise for a toll road.

Second. The board of county commissioners did not have jurisdiction to appoint the commissioners to act with the commissioner appointed by Kelly F. Gibson in laying out and surveying and making maps and profiles of the proposed toll road; that all the acts, maps, and profiles done, drawn, and filed by the commissioners were done without authority of law, and were illegal and void.

Third. That each and every act done, and each and every resolution, order, and agreement made and entered into by and between the county commissioners and Kelly F. Gibson, was without right and authority, illegal, and void. The board of county commissioners did not have jurisdiction of the above numbered and styled cause of action.

Upon the trial of the case in the district court the defendant Gibson moved to dismiss the appeal for the reason the order of the county commissioners granting said franchise was not appealable, and that the statute which permitted the appeal without notice was unconstitutional and void. On the trial of the case the court rendered judgment. The material parts of the same are as follows:

"It is therefore ordered, adjudged, and decreed by the court that the report of the road commissioners selected to lay out the toll road and highway between the town of Chelsea, Rogers county, Okla., and the city of Claremore, Rogers county, Okla., the same having been filed in the office of the county clerk of said county on the 11th day of November, 1916, be, and the same is hereby, disapproved and rejected, and the cause remanded to the board of county commissioners of Rogers county, with directions to proceed further by having a new survey made if in their judgment they see fit to do so."

From said judgment Kelly F. Gibson has appealed, and the case is now before this court.

The plaintiff in error alleges 12 separate and distinct assignments of error; the third assignment being that the order, decree, and judgment of the court is contrary to the law, and not sustained by sufficient evidence.

It is agreed that the law applicable to establishing a toll road is found in article 16, chapter 15, Revised Laws of 1910, being sections 1485 to 1496, inclusive. The law permitting the establishment of toll roads provides that, after the commissioners have been appointed, they must view the road and route, and the same must be surveyed and a map filed with the board of county commissioners giving the general course of the road, the principal points by which it runs, its width, which must in no case exceed 100 feet. The board of county commissioners must then either approve or reject the survey.

The history of this road appears to be that prior to November, 1916, the general public was using a road from Claremore to Chelsea on the right of way of the St. Louis & San Francisco Railroad. The witnesses all describe this as the old trail. At several places along the railroad this trail extended away from the right of way of the Frisco Railroad out on private property. There is no contention, as we gather from the evidence, that this was a public highway, but it was a road or trail that was used by the public on the right of way of the Frisco Railroad Company, and at certain places the trail extended off of the railway right of way on private land for the purpose of preventing the crossing of some obstruction on the right of way.

The record further disclosed that the county commissioners in Rogers county act as township officers of each township. It further disclosed that the townships through which this road extended voted certain bonds for building roads, and the inference would be the building of this particular road. The county commissioners entered into a contract with Kelly F. Gibson to build and construct this particular road running alongside of the right of way of the Frisco Railroad. The evidence disclosed that no right of way was obtained for this road, but the road was actually constructed for about 14 miles. It appears that they signed the contract as the board of county commissioners, when in fact the contract for the road should have been signed by them as trustees for the several townships. It appears that the district court of Rogers county enjoined the county commissioners from paying for this road; that at the trial of the injunction suit Gibson asked to intervene, and to be made a party, but the court refused to permit him to be made a party thereto, and denied him the right to intervene.

There was evidently some feeling over the outcome of this case. The record discloses upon several occasions the court voluntarily stated that he had not enjoined Gibson from proceeding individually against the commissioners for his pay for building this road. It appears that after the injunction suit enjoining the county commissioners from

paying for the road, a great portion of which had been built and constructed, Kelly F. Gibson filed his application for making this a toll road. The evidence disclosed that the county had no right to the road; it was not even designated as a public highway; that Gibson purchased a great portion of the right of way for this toll road. The county commissioners appointed two road commissioners according to law to view the road, who with the commissioner appointed by Gibson viewed the road, and filed their survey, report, and map of the road with the county commissioners. The board of county commissioners approved the same, and from this order approving the report of the road commissioners certain taxpayers appeal.

The record disclosed that no objection was made to the county commissioners granting this franchise, but, after the same had been granted, a number of persons filed a petition requesting the county attorney to appeal, claiming that they were taxpayers and freeholders of Rogers county. After the appeal the assistant county attorney, representing the taxpayers, filed in the form of a motion their objection to the order of the county commissioners granting the toll road. This was evidently treated as an answer, and raised only jurisdictional grounds. The trial court evidently found the county commissioners had jurisdiction. There is nothing in the record to disclose why the county commissioners did not have jurisdiction. The trial court does not disclose why it refused to approve the survey and map filed with the county commissioners by the road commissioners. There is no evidence in the record, nor is there an intimation in the record, that the route of the road was not fully described, nor is there any intimation by any one why the same should not be accepted. We have examined the record, and, peculiar as it may seem, over 70 people signed the petition requesting the county attorney to appeal from the order of the county commissioners granting the franchise for this toll road. Ordinarily one would expect that they had some interest in the case, and would be called as witnesses to testify why the order of the county commissioners appealed from was wrong.

This record disclosed that of these 70 persons who signed the petition not one was used as a witness in the trial of the case. The only witnesses examined in the trial of the case were the county officials and ex county officials, being the three members of the county commissioners who approved the order, the ex county surveyor who had

made the survey, and had drawn the maps, and an attorney by the name of C. B. Holtzendorff. We have examined his evidence, and the testimony offered by him upon direct examination was about a bridge being removed from the old trail to a place where the toll road was constructed, and he then further testified that he felt that a toll road injured the county. If there was any reason or any evidence to show wherein this survey or this road should be changed, it is not in the evidence.

The evidence of Mr. Holtzendorff states there were places along the old trail where the old trail left the right of way of the Frisco Railroad and extended out on private ground, and where this occurred the building of this toll road to a certain extent interfered with the traveling of the old trail on private ground, or, in other words, it prevented the general public from trespassing upon private ground.

The appellants below also introduced the evidence of Mr. McClellan, but he testified that the old trail could be traveled, and was not interfered with by the construction of the toll road. This was the only evidence against the granting of this franchise, or objection that we can find in the record. Why the taxpayers objected to this toll road does not appear. The county commissioners were familiar with the road. The county surveyor stated all the parties were familiar with the road, and the road had been practically graded. Every one was familiar with the route, and the county commissioners approved it. The county did not own the right of way; did not pay for the grading. It was agreed that Mr. Gibson had done the grading, and that the public in general was not entitled to use the road until paid for.

The trial judge made a very extensive cross-examination of several of the witnesses. The examination was technical in its nature, and was directed to a portion of the report of the road commissioners wherein the report stated as follows:

"We have duly examined the feasibility of the construction of said road, and the necessity for the construction of the same."

The judge in this examination attempted to show that the report of the commissioners was incorrect, as the commissioners did not examine the feasiblity of the construction of the road, because the construction had already been completed, and that the report in referring to the necessity for the construction of the road was also incorrect, in that

the road had already been constructed, or at least a great portion of the same. While this may be technically correct, and while it is the privilege of the trial judge to examine witnesses, and especially in equity cases, in order that the judge may be fully advised as to the facts in the case, and to render a proper judgment thereon, we doubt the wisdom or practice of the trial judge engaging in an extensive and technical examination of the witnesses such as might be expected of opposing counsel, and when said examination extends over six or seven typewritten pages of testimony as to each witness, it seems somewhat lengthy, especially when the examination is technical in its nature and not attempting to elicit new information. This practice would, no doubt, influence the judge, or bias him in deciding questions that must be decided by him impartially. So far as this record is concerned, there does not appear to be any contradictory evidence of any kind or character unless it is the fact that two of the witnesses for the appellants below contradicted themselves, but only in minor details. One said that the toll road interfered in some place with traveling the old trail. The other one stated that it did not.

It is true that the road commissioners appointed to view this road did not view it with the same careful attention that might be given a road where the boundaries and lines were not easily ascertained. In viewing a route for establishing a toll road, one would naturally expect, if the party had already constructed his road and graded the same, that it would not require the same careful attention to determine the most feasible route the road should take as it would require if the boundaries of the road were not distinctly defined. The boundary lines to the route of this road were in plain view. There is no one asking to have the route of this road changed, and no one even suggested that another route would be more beneficial or feasible, and the only objection to the granting of the franchise that we can gain from reading the testimony was that the attorney stated that he did not believe the toll road was beneficial to the county. This we do not think sufficient to overcome the opinion of the board of county commissioners.

From an examination of the evidence it appears that the appeal from the order of the board of county commissioners was without merit. The persons desiring the appeal did not appear to have sufficient interest in the case to testify. Upon what grounds the appeal was taken does not appear in the evidence, unless it was based upon the idea that the general public might obtain a road for the use and benefit of the county for nothing, to wit, a road which had cost about $27,000, which was built by a private individual, and which certain taxpayers enjoined the county from paying for. This road was built upon private ground. The county is not entitled nor the general public entitled to receive something for nothing. If they do not desire to pay for this road built upon private ground, they have no right to the use of the same.

The question of the county commissioners being enjoined in another action occupies considerable space in the evidence in this case, and while the merits or demerits of that case are not before us, still this court has held that municipal corporations cannot receive benefits and use the same, and then claim the contract was void and defeat paying for them. This has been decided in the case of D'Yarmett v. School District No. 27, 72 Oklahoma, 179 Pac. 20. The appeal from the order of the county commissioners was based upon jurisdictional grounds. The trial court evidently found the commissioners had jurisdiction, and there is nothing in the case to show want of jurisdiction.

There is no evidence to show in what way the taxpayers or any one would be affected by the granting of this franchise or accepting this survey, unless it would do to say that, where a party has constructed about 14 miles of road on private ground, the general public would be entitled to travel the same without any expense to them. This does not appear to be right or just. If the public did not desire to pay for the building of this road, they have no right to use the same. The order of the trial court in disapproving the survey and the report of the road commissioners and in ordering a new survey does not appear to be supported by the evidence in the case, but is contrary to the evidence.

There are other assignments of error, but it will be unnecessary to pass upon any of the same as this one question disposes of the case.

It therefore follows that the judgment of the trial court is reversed, and the case is remanded, with instructions to the court to dismiss the appeal of the taxpayers from the order granting the franchise by the county commissioners.

OWEN, C. J., and SHARP, PITCHFORD. and HIGGINS, JJ., concur.