**GROVE BRIDGE CO. et al. v. STATE ex rel. HAMPTON, County Attorney of Delaware County.**

No. 18625.   Opinion Filed July 3, 1928.

Withdrawn.   Corrected, and Refiled Nov. 13, 1928.

W. H. Kornegay and F. D. Adams, for plaintiffs in error.

J. W. Miller, G. W. Goad, and W. F. Hampton, for defendant in error.

LESTER, J. On the 16th day of February, 1927, W. F. Hampton, county attorney of Delaware county, Okla., on relation of the state, filed a petition in the district court of Delaware county in which it was alleged that the defendants were willfully and wrongfully engaged in the collection of toll on a certain bridge located across Grand river in Delaware county, in the state of Oklahoma, and that Delaware county, at great expense, had caused to be graded and graveled a public road between Grove and Bernice, Okla., on which was located said public bridge. The plaintiff alleged that the defendants, as a means of enforcing toll collections from the public, caused to be placed at each entrance to said bridge an iron or wooden rail which prevented the passage of travelers thereon until toll charges were paid by said travelers. Plaintiff further alleged that defendants were claiming the right to charge toll for passage across said bridge by virtue of a certain franchise granted by the United States Court for the Northern District of Indian Territory on the 4th day of February, 1903 which ran for a period of 20 years; that under all the terms and conditions of said order and judgment of said court granting said franchise, said franchise had fully expired on the ——day of February, 1925. The plaintiff prayed that an injunction be granted restraining and enjoining said defendants from enforcing or attempting to enforce the collection of toll from persons desiring to cross the bridge on said public highway.

A restraining order and temporary injunction were granted against said defendants, restraining them from collecting or attempting to enforce the collection of toll charges, and thereafter the injunction was made permanent, and from this judgment the defendants have appealed, and from the order of the court refusing to decree title to the bridge property in the state, the plaintiff filed a cross-appeal.

A brief statement of the manner in which the owners of the bridge property acquired their right and franchise therein is as follows: An Act of Congress of February 18, 1901 (31 U. S. Stat. at Large 794), put in force in the Indian Territory sections 504 to 509 of Mansfield's Digest of the Statute of Arkansas. These sections of that statute gave to the county courts of Arkansas the right to grant the privilege of building turnpikes and the erection of toll bridges, and further empowered the said courts of the said state to fix the charges to be made for the use of said improvements by the public. Said act of Congress further provided that wherever in said sections of Mansfield's Digest the words "county courts" occurred, the words "United States courts" shall be substituted therefor. Therefore, said act of Congress provided a method by which persons might secure from the United States court then existing in the Indian Territory a franchise to construct a toll bridge and to make such charges as were fixed by the said court.

Pursuant to said act of Congress, W. L. McWilliams and F. D. Adams made an application to the United States District Court for the Northern District in Indian Territory for a franchise to build and construct a certain toll bridge at a public crossing known as Carey's Ferry. On the 4th day of February, 1903, said court entered its order granting to said applicants a franchise and the right to build, construct, and maintain a toll bridge at Carey's Ferry, for a term of 20 years, and to charge and collect reasonable tolls for the use of said bridge.

It thereafter appears that the Grove Bridge Company became the owners and assignees of said franchise; and that said company filed an application in the United States Court for the Northern District of the Indian Territory for the purpose of causing said court to fix the rates of toll to be thereafter charged by the said bridge company; and that on the 14th day of November, 1907, said court entered its order fixing the

rates of toll to be charged the public by said bridge company, and in addition thereto the order provided:

"That the grant of franchise for the erection of a toll bridge over Grand river in the Indian Territory, at or near Carey's Ferry on said river, for a period of 20 years, with the right to charge and collect tolls for the use of said bridge as a toll bridge, made by this court to W. L. McWilliams, F. D. Adams, and their associates and assigns, on the —— day of February, 1903, and afterwards assigned by said grantees to their assignee, the Grove Bridge Company, a corporation, be, and the same is hereby confirmed in the assignee of said grantees, the said Grove Bridge Company, for a period of 20 years from the date of the opening of said toll bridge over Grand river at Carey's Ferry, to public travel on February 1, 1905."

The plaintiffs in error in their brief, at page 31, state:

"There are two assignments of error. The first assignment is concerning the action of court in striking out that portion of the answer which stated that the tolls received were not sufficient to pay for the investment with 6 per cent. interest."

The bridge company in its answer admitted that it had sought to enforce and collect toll charges from the public in the manner alleged in plaintiff's petition. The bridge company in its answer further alleged that the tolls received by said bridge company during the time that it had maintained and operated said bridge were not sufficient to pay the expenses of operating the same and did not pay 6 per centum on the capital invested to the time of the filing of said answer.

The bridge company having admitted in its answer that it had enforced the collection of toll from the traveling public in the manner alleged in the plaintiff's petition, it then becomes material to learn under what legal franchise or right travelers upon a road maintained by the county and state may be compelled to pay toll charges, in order to further enjoy the privilege of using said public highway.

It is evident that such authority must be plain, adequate, and unequivocal.

The bridge company, in justification of its acts, relies therefor upon several reasons. In its answer to plaintiff's petition it sets out its charter and franchise granted by the court, and in addition thereto it claimed that it had not received a sum sufficient from the toll collected to reimburse the owners for their investment; that it had not earned an income of 6 per centum per year; that the land upon which the abutments rested had been purchased from an Indian allottee; that it had paid taxes on said property; that it had secured a license from the Corporation Commission of the state of Oklahoma.

It further contends that, even though its franchise had expired, they still had a right to retain said property and to collect toll from the public.

The bridge company cites a number of cases where utility companies, after the expiration of their franchise, were permitted to retain title to their property.

The district court refused to adjudge title to the bridge property either in the county or state; it simply enjoined the bridge company from obstructing passage by the public over the bridge or from attempting to collect toll charges made against the traveling public over said bridge.

As heretofore noted, the franchise in question was granted to individuals, who, thereafter, assigned their rights to the Grove Bridge Company.

Section 506, Mansfield's Digest, provides:

"All privileges granted by the county courts by virtue of this act to any person shall inure, not only to the benefit of such person to whom the same shall have been granted, but also to his heirs, assigns, and to the same extent and for the full length of time as may originally have been granted in the first instance."

The original franchise herein having been granted to individuals, therefore, its existence is wholly independent of, and is neither connected with nor influenced by the corporate existence of the Grove Bridge Company, to whom the franchise was assigned by the original grantees.

The question presented in the instant case is not new or novel to the courts of America. Long prior to the undertaking by governmental agencies in America to build and maintain roads and bridges at their own expense, many of the states of the Union enacted legislation authorizing franchises to be granted to individuals, partnerships, or corporations to build, construct, and maintain turnpikes and bridges, and permitting the owners thereof to collect toll charges from the traveling public for its use of the same. Upon the expiration of franchises of this character, many controversies have arisen

in the several states as to the respective rights of the state and the grantees of the franchises.

In 9 Corpus Juris, 451, section 42, par. c, it is said :

"When a franchise to take tolls on a permanent bridge on a public highway ceases, the right of the public to use the bridge as a free one attaches without any right on the part of the builders to remove the structure and to destroy the highway. And this is so, although there is no express statutory provision to that effect."

In 5 Cyc. 1076, par. c, it is said:

"When the franchise to take tolls upon a permanent bridge on a public highway ceases, the right of the public to use the bridge as a free one attaches without any right on the part of the builders to remove the structure and destroy the highway."

Again, in 38 Cyc. 391, par. 3, it is said:

"Upon the termination of the franchise of a toll road company by expiration of the time limited for corporate existence or by abandonment, revocation, or forefeiture, the title to · the road does not revert to the abutting owners, especially where they have conveyed their rights without reservation or limitation in the first instance; but the title and use of the road reverts to the public, or, more accurately speaking, the road, which has been a public highway during the time tolls were collected, continues to be a public highway disburdened of tolls. Any attempted conveyance of the title by the toll road company thereafter is void and ineffectual, and an attempt on the part of the company to close up the road and use it as private property will · be restrained by the courts."

In the case of State of Nevada ex rel. W. M. Boardman v. Myron C. Lake, 8 Nev. 276, the court said:

"Further objecting to surrender, appellant shows that since the date of the grant of 1862 he has acquired title in fee to the land on which the ends of the bridge rest and on both sides thereof, and also to a portion of the land on which the road is located. Precisely when this title was obtained does not appear, nor does it matter, as it is not necessary to resort to the principle of prescription in this case. Appellant's title can avail nothing in this contest; his possession of such title, and the posession by the public of the easement of traveling the road, are in no sense antagonistic. The public does not claim the fee, and it rests intact in Lake, subject only to the easement named.

"This easement could have been raised in various ways, which need not here be specified, but was actually here fixed by the solemn dedication of appellant. No court has ever in its utmost strictness called for more conclusive evidence of dedication than is presented by the statutory contract of 1862 and the acts of appellant thereunder, making it absolute, fixed and executed. Lade v. Shepherd, 2 Stra. 1004; Connehan v. Ford, 9 Wis. 240; Cincinnati v. Lessees of White, 6 Pet. 435; Hobbs v. Lowell, 9 Pick. 405; Daniels v. People, 21 Ill. ·439."

In syllabus No. 1 of said case it is stated:

"At the expiration of a toll road franchise, the control of such road reverts to the sovereign; and in the absence of other special disposition, the free use of such road would be thereafter in the people."

In the case of State of Nevada ex rel. Geo. W. Keith v. Daton & Virginia Toll-Road Company, 10 Nev. 155, the court there said :

"The fact, claimed by respondent, that the road was private property at the time of the passage of the act, and that no person could travel over it without permission of the owners, does not destroy the statutory contract to dedicate the road to the public in consideration of the privilege of collecting tolls thereon for the period of ten years. By allowing travelers to pass over the road and by collecting tolls thereon they dedicated their road to the public use, and the general public have acquired such an easement to travel over the road as precludes the owners from asserting any ownership inconsistent with such use. (Angell on Highways, sec. 142; Ogle v. P. W. and B. R. R. Co , 3 Houston's Del. 272; City of Shreveport v. Walpole, 22 La. Ann. 526; State ex rel. Boardman v. Lake, 8 Nev. 284, and authorities there cited.)"

In the case of Montgomery County v. Clarksville & R. Turnpike Co. (Tenn.) 109 S. W. 1152, the court there said:

"The bridge in question was regarded by the original company as an essential part of its road, and its erection was nothing more than a laying out of a highway, burdened as a matter of course with the legislative grant to charge tolls during the corporate life of the company. The only difference between a turnpike and a common highway is that, instead of being made at the public's expense in the first instance, it is authorized and laid out by public authority and made at the expense of individuals, and the cost of construction and maintenance is reimbursed by a toll levied by public authority for the purpose. Every traveler has the same right to use it, paying the toll established by law, as he would have to use any other highway.' Commonwealth v. Wilkinson, 16 Pick. (Mass.) 175, 26 Am. Dec.

654; Angell on Highways, p. 8, section 9. And in analogy to toll roads are toll bridges. Angell on Highways, p. 32; Elliott on Roads and Streets, p. 21, and cases cited. So there is no doubt but that the right to exact tolls upon the turnpike ended with the corporate life of this company, and there is as little doubt that, upon this turnpike becoming a public highway on the 1st of January 1899, the franchise to take tolls upon this bridge, which was a part of it, equally ceased. State v. Lawrence Bridge Co., 22 Kan. 438; Central Bridge Corp. v. City of Lowell, 15 Gray (Mass.) 106; State v. Lake, 8 Nev. 276."

And in syllabus No. 4 of said opinion it is said:

"A county may maintain a suit to restrain collection of tolls on turnpike, including a bridge, after the right to exact tolls has expired, by reason of the termination of the corporate existence of the company organized to construct the turnpike with the right to exact tolls."

In the case of State v. Jonas C. Maine, 27 Conn. 641, the court there said:

"In the case before us, the way was an easement belonging to the public, for whose use it was created, and the privilege of collecting tolls upon it, a franchise vested in the turnpike corporation. The resumption of the franchise by the sovereign power left the easement disburdened of the tolls, but otherwise unaffected, and, in the language of the resolutions, 'to be and remain part of the public highway in the respective towns in which it is situated, to be maintained and treated in all respects as public convenience and necessity require, in the same manner as though said road had been originally laid out and made by said towns,' & c. For this easement, originally contemplated as perpetual, and estimated accordingly, the landowners must be presumed to have received their compensation at the time the road was laid. The claim of the defendant, therefore, for further compensation, has no foundation either in justice or in law."

In the case of Virginia Canon Toll-Road Co. v. People ex rel. Vivian (Colo.) 45 Pac. 398, the court there said:

"Once a highway always a highway, until vacated by the proper authorities, is the general rule. The easement in, or the right to pass over, the roadway which the corporation laid out, belongs to the public, subject to the necessity of paying tolls only for such length of time as the corporation exists. The contract between the state and the corporation, contained in the charter, or resulting from the act of incorporation under the general laws, is that the corporation shall possess during its corporate life the power of collecting tolls, which is regarded as a compensation, and a full equivalent, for the cost of construction and operating the road. The corporation accepts the grant, subject to this condition, and supposing, at least, that the business will prove remunerative. This right to collect tolls, not belonging to the corporation either as a matter of common right, or for an indefinite time, as a grant from the Legislature, but for such length of time as the corporation itself is permitted to do business, remains the property of the company only until the dissolution or expiration of its charter, and after that is neither the property of the corporation nor of its stockholders, but reverts to the state. This property does not, therefore, like the tangible property of a corporation, pass to its stockholders, subject to the rights of creditors, for the obvious reason that the franchise, as originally granted, was limited * * * to 20 years. * * *

"The plaintiff in error, moreover, insists that the state is estopped to question its right to exercise this franchise, because taxes upon its property have been assessed and collected since the expiration of the old charter, through which the state has received some benefit. To this we answer —First, that there is nothing in the record to show that any taxes have been levied, or paid by the plaintiff in error, either upon its tangible property or upon its franchise, as distinct therefrom; second, the prolongation of the corporate existence may not be effected by the levy by the state or county officers of a tax which the corporation voluntarily pays. If such were the law, mere administrative officers could successfully abrogate the Constitution, nullify legislative enactments, and confer and extend special privileges and franchises which the legislative department of government itself, by general law, would be unable to do. For the foregoing reasons, it follows that the judgment of the district court should be affirmed, and it is so ordered."

In paragraphs 2 and 4 of the syllabus in the case last cited, it is said:

"2. The purchaser of toll road takes the property and franchises of the grantor subject to all the burdens and limitations imposed by the original grant."

"4. A toll-road corporation does not acquire by the grant a property right in the road, but only an easement, which, upon its dissolution, or the expiration of its charter, reverts to the state."

In the case of Gardella v. Amador County (Cal.) 129 Pac. 993, the court said:

"In this state of facts, the bridge unquestionably was, when the orders of the 4th and 5th days of April, 1898, were made, a

free public highway, and not, as declared in one of the conclusions of law, a toll bridge, with respect to which the plaintiff was the owner of a valid franchise. By the Act of 1862, under which the bridge was originally constructed, the right to collect tolls was granted for the period of 20 years. Upon the expiration of that period, the right ceased by limitation. Pbl. Code, section 2619; People v. Anderson, etc., Co., 76 Cal. 190, 18 Pac. 308; People v. Davidson, 79 Cal. 166, 21 Pac. 538; Blood v. Woods, 95 Cal. 78, 86, 30 Pac. 129; People v. Auburn, etc., Turnpike Co., 122 Cal. 335, 55 Pac. 10. The construction of a road upon the grant of a franchise to collect tolls is a dedication of the road to public use, subject only to the right to collect tolls. Blood v. Woods, supra. The road belongs to the public, and the only interest of the holder of the franchise is the right to collect tolls as a compensation for building the road. Wood v. Truckee Turnpike Co., 24 Cal. 475; Kellett v. Clayton, 99 Cal. 210, 33 Pac. 885. There is no right to compensation when the right to take tolls has ceased by expiration of the term for which it was granted, or by abandonment. McMullin v. Leitch, 83 Cal. 239, 23 Pac. 294. The same rule applies to bridges (Sears v. Tuolumne County, 132 Cal. 167, 64 Pac. 270), which are highways under the definition of the statute. Pol. Code, section 2618."

In the case of Scheper et al. v. Clark et al. (S. C.) 117 S. E. 599, the court in syllabus No. 2 said:

"A turnpike company by acceptance of its charter and operation under it in the collection of tolls on a particular highway dedicates the road to public use, which dedication cannot be revoked by the company upon the expiration of its charter, and this though the company may have owned the fee."

The defendant company cites the case of St. Clair County Turnpike Company v. People of Illinois ex rel. John B. Bowman, 96 L. Ed. (U. S.) 651. In that case the 15th section of the charter issued to the turnpike company provided:

"The state reserves the right to purchase said road at the expiration of said charter, by paying to said corporation the original cost of said road, laid out and expended in constructing the same, to be ascertained by examination of the books of said corporation, by commissioners to be appointed by the Legislature; and, in case of nonpayment or redemption by the state at the expiration of the charter, the said road, with all its appendages, shall remain in the possession of said corporation, to be used, controlled and possessed under the rights and restrictions in this charter contained, and may demand and receive tolls as herein stated, until such time as the state shall refund said sum of money, the original cost of construction, and which right the state hereby reserves."

The court in the above case said:

"If the company had been authorized to construct the dike and bridge, and had done so; or if it had been authorized to acquire a proprietary interest in the property in fee, and had acquired such interest, the case would have had a different aspect. Then the question would have been, whether the state could have taken back the property without just compensation. But it does not arise in this case. The only question here is, whether, in resuming the possession of the bridge and dyke, by subjecting them to the control and management of the City of East St. Louis, it has passed a law impairing the obligation of a contract. We think it has not."

In the case of State of Kansas v. Lawrence Bridge Company et al., 22 Kan. 438, the court said:

"When the license to take tolls expired, the public took the bridge disburdened of tolls. Craig v. People, 47 Ill. 487; State v. Lake, 8 Nev. 276; Central Bridge Corp. v. Lowell, 15 Gray, 106; Thompson v. Matthews, 2 Edw. Ch. 212.

"There is no hardship in this result. Toll roads or turnpikes and plank roads, constructed under public authority for public use by incorporated companies, with provisions in the acts of incorporation for their management, are common highways; and the only difference between them and other common highways is that, instead of being made at the public expense in the first instance, they are authorized and laid out by public authority, and made at the expense of individuals or corporations in the first instance, and the cost of construction and maintenance is reimbursed by tolls, levied by public authority for the purpose. Ang. Highw., sections 8, 9, 14."

In the case of State ex rel. Allison v. Hannibal & Ralls County Gravel Road Company, 138 Mo. 332, the court in the syllabus No. 2 thereof said:

"2. A turnpike road company, organized under the Law of 1851, limited by said act to 30 years, and by the Act of 1857 given, by name, 'perpetual succession,' has only an easement in a public highway for 30 years after the Act of 1857; and at the end of that time it could no longer collect tolls nor make a deed of its pikes or plank roads to another company, because it had no legal existence. It had no fee-simple right to the land, but a mere easement, which was given it in the first place by the law, and by the consent of the county court, and which ter-

minated with its charter; and in attempting to collect tolls thereafter it maintained a public nuisance."

In the case of State ex rel. Hines v. Scott County Macadamized Road Company, 207 Mo. 54, the court in paragraphs No. 2 and 4 of the syllabus said:

"2. A proceeding by injunction by the prosecuting attorney in the name of the state to restrain a corporation whose charter has expired from further maintaining a public nuisance, is a proper remedy. And by statute (Laws 1901, p. 235) injunction by the prosecuting attorney in the name of the state to restrain a corporation whose charter has expired from charging and taking tolls from travelers upon a public highway, is expressly made the remedy'

"4. A corporation organized to maintain a turnpike road and to charge tolls for the use thereof has no legal right to collect tolls after the expiration of its charter. And as it has no such right, it cannot transfer it to another corporation organized for the purpose of taking over all its properties."

The last-cited case was appealed to the Supreme Court of the United States (see 215 U. S. Rep. 336), and Mr. Justice Holmes, speaking for the court, said:

"This is a suit brought in pursuance of a statute to enjoin the plaintiff in error from maintaining toll gates upon a road alleged to be a public highway. The defendant justifies under a charter granted by a special act of February 24, 1853, which contained the following section: '8. The privileges granted in this charter shall continue for 50 years; provided, that the county courts of the counties of Cape Girardeau and Scott may, at the expiration of 20 years, or any time thereafter, purchase said road at the actual cost of construction, and make it a free road.' Mo. Laws, 1853, pp. 337, 338. The defendant says that it has not received the cost of construction, and sets up the Constitution of the Unted States, art. 1, section 10, the Fourteenth Amendment and other less material clauses. The reply is that the right to take tolls expired on February 24, 1903, when the 50 years contemplated the charter had elapsed. There was a trial and a judgment for the relator, which was affirmed by the Supreme Court of the state, and the case was brought here. State ex rel. v. Road Co., 207 Mo. 54."

The syllabus of the last-cited case announced the following rule:

"Following the construction given by the state court, held that where a charter for a toll road provided that the privileges granted should continue 50 years subject to the right of the county to acquire it after 20 years, all privileges ceased on the expiration of the 50 years; and the owner of the franchise was not deprived of his property without due process of the law, nor was the obligation of the contract in its charter impaired, by an injunction, from further maintaining toll gates on such road."

The defendants complained that the county attorney of Delaware county was without authority to institute proceedings against the bridge company.

Section 7870, C. O. S. 1921, provides:

"A nuisance consists in unlawfully doing an act or omitting to perform a duty, which act or omission either. * * *

"Third: Obstruct or render dangerous for passage * * * any street or highway."

Section 7880, C. O. S. 1921, provides:

"Abatement by Officer. A public nuisance may be abated by any public body or officers authorized thereto by law."

Section 420, C. O. S. 1921, provides:

"An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance."

We think the county attorney was fully authorized to institute the instant proceedings against the defendants.

We have carefully examined the cross-petition filed by the plaintiff below, with authorities submitted thereon, and we think the judgment entered below is without error.

The franchise of the defendants had long expired when this action was filed in the court below, and the defendants, without further right or license, were engaged in preventing the public from passing over said bridge until they had exacted the payment of toll charges. Clearly, said acts constituted a willful nuisance, and an injunction to abate the same would properly lie.

Judgment is affirmed.

MASON, V. C. J., and PHELPS, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.