## POSTAL BRIDGE CO. v. STATE ex rel. DABNEY, Atty. Gen.

No. 20262. Opinion Filed Nov. 5, 1929.

Wm. L. McCann, for plaintiff in error.

Edwin Dabney, Atty. Gen., Wm. L. Murphy, Asst. Atty. Gen., and M. D. Libby, for defendant in error.

CLARK, J. This cause presents error from the district court of Oklahoma county,

wherein plaintiff in error was defendant and defendant in error was plaintiff. For convenience, the parties will be referred to as they appear in the trial court.

Plaintiff in its petition in the trial court asks that the defendant, the Postal Bridge Company, be enjoined from operating a toll bridge across the South Canadian river near Bridgeport, and further asks that defendant be enjoined from collecting toll. Plaintiff's petition alleged that the Postal Bridge Company is an express trust; that the De Luxe Bridge Company was a corporation, organized under the laws of the state of Oklahoma; that its charter was granted January 14, 1920, which was amended November 29, 1920; that said De Luxe Bridge Company, a corporation, obtained from the board of county commisssioners of Blaine county a franchise to operate a toll bridge at the point designated in its franchise, the same being the bridge complained of herein.

Petition further alleges that on July 11, 1921, the De Luxe Bridge Company, by bill of sale, sold to the Postal Bridge Company, defendant herein, all of its property and franchises heretofore granted to the De Luxe Bridge Company. The petition further alleges that the De Luxe Bridge Company, a corporation, was not authorized to own a franchise and operate a toll bridge within the state of Oklahoma and for that reason did not have any franchise or right to operate a toll bridge that could be assigned to the Postal Bridge Company.

The petition further alleges that the Postal Bridge Company, an express trust, is unauthorized by the state of Oklahoma to operate a toll bridge and is without authority to maintain said bridge and collect toll. Petition further alleges that said bridge and bridge property, as herein described, has been dedicated to the use of the public and the public has acquired an easement therein with the right to the use thereof free from any and all toll charges.

Defendant filed an objection to the temporary injunction being granted; said matter was heard and a temporary injunction granted, from which action of the court defendant, plaintiff in error, appealed. This cause presents three questions: First. Was the De Luxe Bridge Company such a corporation that it could acquire a franchise? Second. If so, could said franchise and toll bridge be transferred or assigned to the Postal Bridge Company? And third. If said charter or franchise of the De Luxe Bridge Company or right of the Postal Bridge Company is defective, would injunction be the proper remedy to correct the same?

The De Luxe Bridge Company attempted to incorporate under section 5366, C. O. S. 1921, which provides that the term of existence of a bridge corporation shall not exceed 20 years. This proviso is complied with in the charter, and in addition to the matters required by section 5304, every corporation formed for the purpose of constructing a bridge over any stream of water must in the articles of incorporation specify as follows: The place where such bridge is to be built; over what stream; that the banks on both sides of the stream over which the bridge is to be built are owned by such corporation or that it has obtained in writing the consent of the owners of the bank where the bridge is to be built, to build the bridge; or that the banks at such place are included within and part of a public highway, and in each case that the consent for the erection of such bridge by such corporation has been obtained, and must file a certified copy of these articles of incorporation in the office of the register of deeds in that county or counties in which the bridge or any part thereof is located or to be located. It was impossible for the corporation to comply with all requirements of this section. The record discloses that this section was complied with as soon as possible after the corporation came into existence. Could it be said that a corporation before it was incorporated could acquire land on both sides of the stream? A corporation that had not been incorporated and is not in existence could not acquire land and could not own land. Could it be said that a corporation before it is incorporated could have the consent of the county commissioners of the county where it intends to build a bridge? The corporation, not being incorporated, is nonexistent and no consent could be given and no land could be conveyed to the corporation. This part of the section requiring the ownership of the land and the consent of the county commissioners was complied with after the De Luxe Bridge Company was incorporated.

Section 5293, C. O. S. 1921, provides the due incorporation of any company claiming in good faith to be a corporation under this chapter and doing business as such, or its right to exercise corporate powers, shall not be inquired into collaterally in any private suit to which such de facto corporation may be a party, but such inquiry may be had, and action brought, at the suit of the

state, in the manner prescribed in Civil Procedure.

It is contended by plaintiff that the failure of the De Luxe Bridge Company, a corporation, to comply strictly with section 5366, supra, made its charter and all rights acquired thereunder invalid. With this contention we cannot agree. There is no question raised as to the good faith of the De Luxe Bridge Corporation, and under section 5293, supra, its right to exercise corporate powers cannot be inquired into collaterally. This is a collateral attack, and a court of equity will not lend its powers to such an attack. The record discloses that the De Luxe Bridge Corporation acquired land on both sides of the stream where this bridge was built, that a franchise was granted by the county commissioners of Blaine county, which franchise provided the grant should be to the De Luxe Bridge Company and assigns.

It will not be contended that section 5366, C. O. S. 1921, authorizing corporations for the erection and maintenance of bridges in Oklahoma, could have been strictly complied with, as heretofore stated, and substantial compliance is all that could have been accomplished, and this statute must be given such construction that it will not destroy its effectiveness. To hold that this section must be strictly complied with would mean that the act of the Legislature would be stricken down and would be of no force and effect, as it is impossible to strictly comply with same. The record discloses that there was a substantial compliance with all the requirements of section 5366 by the De Luxe Bridge Company. Plaintiff alleges that this bridge was dedicated to the public use. Just on what theory plaintiff can contend that the De Luxe Bridge Company was not a corporation, could not own a toll bridge or franchise, yet would be able to dedicate the same to the public use, we cannot understand. Unless the De Luxe Bridge Company acquired the right to own and operate a toll bridge, the land on both sides of the stream belonging to the De Luxe Bridge Company, and a bridge constructed thereon by its successors and assigns, is still private property.

Defendant in error contends that section 5367 is the only statute in Oklahoma granting authority for any person, firm, or corporation to own and operate a toll bridge, and that said section limits that authority to toll bridge corporations incorporated as provided by section 5366. This section is not a grant of power from the Legislature, but is a limitation upon a toll bridge corporation incorporated under section 5366, supra, provided that it cannot operate without it secures a secondary franchise from the county commissioners of the county or counties in which it is located.

In the case of Grove Bridge Co. v. State ex rel. Hampton, Co. Atty., 133 Okla. 115, 271 Pac. 846, this court in the first paragraph of the syllabus stated:

"The construction of a toll bridge erected on a public highway, under a franchise permitting the collection of toll from the public, constitutes a 'dedication' to the public's use, subject only to the right to collect tolls, and the only interest of the holders of the franchise therein is the right to collect tolls as compensation for the building of the bridge, and when the franchise terminates the bridge reverts to the state disburdened of toll."

As was well said in this case, the only interest the holder of the franchise therein has is the right to collect toll as compensation for the building of the bridge, and when the franchise terminates the bridge reverts to the state disburdened of toll. There is no contention in the case at bar that the franchise has terminated. It is the contention that the De Luxe Bridge Company and the Postal Bridge Company never received any franchise. The franchise is a grant from the state as compensation for the building of the bridge, and if there was no valid franchise, there could be no valid dedication. Can the state be heard to say, "We will permit you to build this bridge on the theory and belief that you have a valid franchise and that you may dedicate it to the public use, and then enjoin the company from collecting toll?" The state has no right to take private property for public use without compensation, and a court of equity will never lend its aid to such proceeding.

In the case of State of Nevada ex rel. Geo. W. Keith v. Dayton & Virginia Toll Road Co., 10 Nev. 155, the court there said:

"The fact, claimed by respondent, that the road was private property at the time of the passage of the act, and that no person could travel over it without permission of the owner, does not destroy the statutory contract to dedicate the road to the public in consideration of the privilege of collecting tolls thereon for the period of ten years. By allowing travelers to pass over the road and by collecting tolls thereon they dedicated their road to the public use, and the general public has acquired such an easement to travel over the road as precludes the

owners from asserting any ownership inconsistent with such use."

So the contract of the De Luxe Bridge Company with the state of Oklahoma was for building, dedicating, and maintaining of this bridge, and the consideration was the right to collect tolls for the period specified in the franchise as limited by the statutes of the state of Oklahoma. Many cases are cited in the brief of defendant in error holding that an injunction will lie to restrain collection of toll where the franchise has expired. This is the holding of this court in the Grove Bridge Company Case, supra, but it is not alleged that the franchise in this case has expired. Some courts hold that the right to collect toll cannot be forfeited. The right to collect toll is a consideration for the erection, building, and maintaining the bridge, and the contract should be so construed that the property of plaintiff in error should not be forfeited to the state for public use without compensation.

We are of the opinion that the De Luxe Bridge Company acquired a valid franchise, and as such was authorized to build, maintain, and operate the toll bridge in question.

This being a collateral attack, under section 5293, C. O. S. 1921, no corporation organized in good faith is subject to such attack. Mitchell v. Carter, 31 Okla. 592, 122 Pac. 691; Higbee v. Aetna Bldg. & Loan Ass'n, 26 Okla. 327, 109 Pac. 236.

The state granted this franchise to the De Luxe Bridge Company and its assigns, and did not attempt to forfeit said franchise as provided by law, and having waited until said franchise had been sold and assigned to the Postal Bridge Company, the state has waived its right to question the validity of the franchise granted by the county commissioners of Blaine county.

The next question is, Can the De Luxe Bridge Company assign and sell its property and franchise to the Postal Bridge Company, an express trust. This express trust is created as provided by chapter 16, page 30, Session Laws of 1919, which provides that an express trust so created under this chapter may conduct any lawful business designated in the instrument of trust and generally to do any lawful act in relation to such trust property which any individual owning the same absolutely might do.

This court, in the case of State ex rel. Short, Attorney General, v. Benevolent Investment & Relief Ass'n et al., 107 Okla. 228, 232 Pac. 35, held that a benevolent corporation owning real estate without authority to own the same, where the same was conveyed before suit to escheat the same to the state was filed, conveyed a valid title.

Syllabus, paragraph 2, reads as follows:

"Although a corporation may have acquired real estate in such manner as to render it subject to be escheated to the state by a proper action begun for that purpose, yet, if such corporation shall, prior to the commencement of such proceeding to escheat, make a bona fide sale or conveyance of said real estate for value, the purchaser at such sale will take good title thereto."

Even if the De Luxe Bridge Company had failed in some particular to comply with the law, it had such a right and interest in the franchise that the same could be conveyed and give a valid title thereto. An express trust can engage in any business that an individual could engage in.

"Individual" is defined in Re United Button Co., 137 Fed. 668, in the following manner:

"Held, the word 'individual,' as so used, is equivalent to person, and as such included corporation,"

This express trust, having a right to engage in any lawful business, would have the right to acquire and operate a toll bridge if not otherwise prohibited by the statutes and Constitution of Oklahoma. We find no inhibition in our statutes or Constitution against the sale of a secondary franchise, where such sale does not prevent the proper exercise of the franchise or defeat the purpose for which the franchise was granted.

It is contended by the defendant in error that a toll bridge can only be owned and operated by a toll bridge corporation organized under section 5366, C. O. S. 1921, and that this is the only authority for the ownership of a toll bridge. With this contention we cannot agree. Chapter 34, article 18, provides for wagon road corporations. Section 5627, C. O. S. 1921, is as follows:

"All wagon road corporations may bridge or keep ferries on streams on the line of their road, and must do all things necessary to keep the same in repair. They may take such toll only on their roads, ferries, or bridges as are fixed by the board of commissioners of the proper county through which the road passes, or in which the ferry or bridge is situate; but in no case must the tolls be more than sufficient to pay 15 per cent. per annum on the cost of construction, after paying for repairs and other expenses for attending to the roads, bridges, and ferries. If tolls, other than as herein

provided are charged or demanded, the corporation shall forfeit its franchise, and must pay to the party so charged $100 as liquidated damages."

Section 5636 is as follows:

"When a wagon, turnpike, or plank road is constructed, owned, or operated by any natural person, this article is applicable to such person in like manner as it is applicable to corporations."

The question of a right of an individual to own and operate a toll road which included the right to own and operate toll bridges as provided in section 5627, supra, was before this court in Gibson v. Rogers County ex rel. Hall, County Attorney, et al., 75 Okla. 51, 181 Pac. 720. In this case the franchise was granted Kelly F. Gibson by the board of county commissioners of Rogers county for the construction and maintenance of a toll road from Chelsea to Claremore. This franchise was granted by the county commissioners, and appeal was taken to the district court. The district court reversed the order of the county commissioners, and on appeal to this court the act of the county commissioners in granting a franchise for a toll road was approved by this court and the franchise was held to be valid. Under this section of the statute, an individual is specifically authorized to own and operate a toll bridge upon procuring a proper franchise from the board of county commissioners in the county in which said toll bridge is owned and operated.

In addition to this, section 10076, C. O. S. 1921, authorizes the county commissioners to acquire by purchase, by agreement with the owner or owners thereof, or by condemnation proceedings, all the rights and properties of whatsoever character of any person, firm, or corporation used for and in the operation of any toll bridge in said county. This specifically recognizes the right of any person, firm, or corporation to own and operate a toll bridge. We are therefore of the opinion that an express trust was authorized, under the statutes of Oklahoma, to own and operate a toll bridge in this state. It is true it took the franchise of the De Luxe Bridge Company subject to the terms and conditions of said franchise. The date of the expiration of said franchise and all requirements of said franchise and all the law relating thereto is binding upon the Postal Bridge Company, assignee of the De Luxe Bridge Company.

At page 54 of the opinion in Gibson v. Board of County Commissioners of Rogers County, supra, this court said:

"This road was built upon private ground. The county is not entitled nor the general public entitled to receive something for nothing. If they do not desire to pay for this road built upon private ground, they have no right to the use of the same."

The bridge in question was built upon private ground. The De Luxe Bridge Company had acquired land on both sides of the stream and the Postal Bridge Company, assignee of the De Luxe Bridge Company, built the bridge and dedicated it to the public use for and in consideration of the right to collect toll thereafter for the time limited in the franchise granted by the county commissioners of Blaine county, Okla., and the laws of Oklahoma. Being admitted that this franchise had not expired, the state cannot by injunction deprive the builders of this bridge of the consideration granted in the contract with the state, that is, the right to collect toll in consideration for building and dedicating the bridge to public use.

The Postal Bridge Company took the bridge property and the franchise of the De Luxe Bridge Company upon this sale, subject to the right of the state, or the contract of the state with the De Luxe Bridge Company, that the same was dedicated to the use of the public and that the same should be maintained for the use of the public, and as consideration for the dedication to the public use, was granted the right to collect toll thereafter. It is not contended or alleged by plaintiff, defendant in error, that said sale in any way interfered with the proper use of said bridge for public use. It is true that the De Luxe Bridge Company did not sell such property and dispose of it in any manner so as to defeat the purpose for which it was erected. Section 5454, C. O. S. 1921, provides:

"For the satisfaction of any judgment against the corporation authorized to receive tolls, its franchise and all its rights and privileges thereof may be levied upon and sold under execution in the same manner and with the same effect as any other property but without any exemption."

Section 5455 provides the manner in which the purchaser shall enter into possession. Section 5456 provides that the purchaser or his assignee is entitled to recover any penalties imposed by law and recoverable by the corporation for an injury to the franchise.

Section 5457 provides:

"The corporation whose franchise is sold as in this article provided, in all other respects retains the same powers, is bound

to the discharge of the same duties, and is liable to the same penalties and forfeitures as before such sale."

This is a specific authority to sell a franchise such as the franchise of the De Luxe Bridge Company in question, conditioned that the purchaser is bound to discharge the same duties as before such sale. It is not contended that the Postal Bridge Company in the case at bar failed to discharge any of the duties imposed upon the De Luxe Bridge Company by said franchise. This franchise was granted to the De Luxe Bridge Company or its assigns. The right to sell and assign the franchise was granted by the granting authority, with the franchise. It has been held that permission to assign a franchise will be implied where the grant is to the corporation, its successors and assigns.

The provision of section 5454, providing such franchise may be sold at forced sale conditioned that the purchaser is bound to discharge the same duties and is liable to the same penalties and forfeitures as before such sale, are an express authority of the Legislature that such franchises may be sold and transferred.

It was held by the Supreme Court of Utah, in the case of Cooper v. Utah Light & Ry. Co. et al., 102 Pac. 202, 7th paragraph of the syllabus:

"Unless the right is given by the power creating it, a corporation cannot sell its primary franchise, or its right to exist as a corporation, but in the absence of any constitutional or statutory restriction, it may sell what is denominated its 'secondary franchise' or its right to occupy and use streets and public places for the operation of its works."

The same court in Dern et al. v. Salt Lake City R. Co., 56 Pac. 556, held:

"A franchise is a contract between the state or other body granting the franchise and the party accepting and acting upon it. It is governed by the general rules applicable to contracts, and either party may waive any breach of the conditions of the franchise:"

It is held in Commercial Electric Light & Power Co. v. City of Tacoma (Wash.) 50 Pac. 592, 4th paragraph of the syllabus:

"A franchise granted by a city to an electric company and its assigns, authorizing it to erect and maintain in the streets poles with suitable cross-arms on which to string wires for transmitting electric currents, is a local easement, and therefore assignable without the consent of the city."

There being no inhibition in our Constitution or statutes preventing a toll bridge company from selling its secondary franchise in this state, and there being an express provision of the statute providing that such franchise may be sold for debt, we must therefore hold that the De Luxe Bridge Company had authority to sell and assign its secondary franchise subject to the conditions and requirements contained in said franchise, and it being shown by the record that the Postal Bridge Company, the assignee of the De Luxe Bridge Company, has observed and complied with all the conditions of the franchise, said sale is not prohibited and in violation of the law. Even if said sale had been unauthorized, it is not subject to collateral attack, and a court of equity would not forfeit this property to the state and thereby deprive the owner of a valuable right without compensation. It is admitted in this case that this franchise is a valuable right. It was acquired in good faith. All the terms and conditions of the franchise have been carried out in good faith. We fully realize that a toll bridge is objectionable to the traveling public and that public sentiment demands that the bridges be free, yet the record discloses in this case that the parties interested at the time the franchise was granted much preferred a toll bridge as a means of crossing the river, to the river without any bridge.

It is true that modes of travel have changed since the granting of this franchise and that the volume has increased and what was at that time a hazardous investment has now become a valuable right. The state, if it desires to make this bridge free, has ample authority to condemn the same and pay for the property rights of the owners therein. It has authority to change its roads and direct the public over some other bridge. A court of equity will not issue its injunction, thereby depriving the owners of their property without compensation.

To sustain the judgment of the trial court would mean that the plaintiff in error, defendant below, had invested its money in good faith, had complied with all the requirements of the franchise, and yet would be deprived of its consideration for building the bridge and dedicating it to public use.

We must therefore hold that the court erred in granting the temporary injunction, and the cause is reversed and remanded, with directions to set aside the temporary injunction and proceed with said cause in accordance with the views herein expressed.

MASON, C. J., LESTER, V. C. J., and

HEFNER, SWINDALL, and ANDREWS, JJ., concur. HUNT, J., absent. CULLISON, J., not participating. RILEY, J., dissents.

Note.—See "Bridges," 9 C. J. §32, p. 446, n. 1.