### HAMILL et al. v. HAWKS et al.
No. 1224.

District Court, W. D. Oklahoma.
May 29, 1931.

C. B. Cochran, of Oklahoma City, Okl. (Ames, Cochran, Ames & Monnet, of Oklahoma City, Okl., of counsel), for complainants.

J. Berry King, Atty. Gen. and W. C. Lewis, Asst. Atty. Gen., for defendants.

KENNAMER, District Judge.

The exhibits to the petition show that Carter et al. filed applications with the boards of county commissioners of Cleveland and McClain counties for permission to construct a bridge over the South Canadian river and to collect tolls. The board of county commissioners of McClain county on the 22d day of April, 1911, passed a resolution making the grants as prayed for; and the board of county commissioners of Cleveland county on the 16th day of May, 1911, did likewise. The grants in both resolutions are perpetual, subject to such limitations as are by law now or may hereafter be provided. Both resolutions further provide that the grants are assignable to any individual or corporation.

The McClain county resolution also provides that the bridge shall be erected within the time provided by law or else the authority granted shall lapse. The Cleveland county grant authorizes the grantees to use so much of the public highway as may be necessary. It is expressly provided that neither grant shall be exclusive. In both grants, reference is made to the "Bridge Company."

There is also attached to the complainants' petition an assignment to a bridge company of all the rights acquired by Carter et al., by virtue of the grants from the counties, together with that portion of the bridge which it is recited was then in process of construction and which was later completed by the corporation.

I am unable to find in the statutes any section expressly authorizing the construction of bridges within the state by individuals, but article 6 of chapter 34, C. O. S. 1921, provides for the incorporation of bridge companies.

Section 5366, C. O. S. 1921, limits the term of existence of such corporations to twenty years and provides further that the articles of incorporation shall give the location of the bridge and shall state if the corporation owns the banks on both sides of the stream; and if it does not own such banks, that it has obtained the consent of the owners thereof to the erection of the bridge; or if the banks at such places are included within and are a part of a public highway, that the consent of the board of county commissioners has been obtained.

Section 5367, C. O. S. 1921, is as follows: "No such corporation shall construct or take tolls on a bridge until authority is granted therefor by the board of county commissioners of the county or counties in which it is to be located."

Section 5368, C. O. S. 1921, provides that the corporate existence of a bridge company shall terminate unless it has obtained from the board of county commissioners the authority mentioned in section 5367, and unless it has within one year commenced the construction of its bridge. The second paragraph of this section provides that its corporate existence shall terminate if the bridge is not completed within three years from the issuance of the corporation's charter.

It is clear from a consideration of sections 5366 and 5367 that the latter section is a limitation upon the power of the corporation created under the authority of section 5366. Such corporation is not authorized after the construction of such bridge to collect tolls unless it obtains authority from the county commissioners of the county where such bridge is located, and it is quite plain

the authority to collect tolls cannot be extended by the county commissioners granting such authority beyond the life of the corporation. This, for the reason it is only corporations chartered for a period of twenty years that have authority from the sovereign to build and construct and operate toll bridges over the streams of the state, and the authority is limited in time to twenty years to such corporation, and it is beyond the power of the county commissioners to authorize the collection of tolls by such corporations beyond the period of limitation fixed by the Legislature.

Article 18, chapter 34, C. O. S. 1921 (§§ 5625–5636) provides for the incorporation of wagon road corporations.

Section 5625, C. O. S. 1921, states that the road must be laid out as follows: Three commissioners appointed as specified must lay out the proposed road and report their proceedings, accompanied by a map, to the board of county commissioners.

Section 5626, C. O. S. 1921, provides that the report must give the road's general course, the principal points thereon, its width, and the same must then be either approved or rejected by the board of county commissioners.

Section 5627, C. O. S. 1921, provides that wagon road corporations may keep ferries or establish bridges on the line of their road, and that they may take only such tolls on their roads, ferries, or bridges as are fixed by the board of county commissioners of the county through which the road passes, or in which the ferry or bridge is situated.

Section 5636, C. O. S. 1921, reads as follows: "When a wagon, turnpike or plank road is constructed, owned or operated by any natural person, this article is applicable to such person in like manner as it is applicable to corporations."

It is obvious from the grants that the grantees were not endeavoring to proceed under the wagon road incorporation article. Nothing is said therein with reference to the commissioners, the survey, or anything about a road. This article clearly contemplates that bridges and ferries which may be established are for the purpose of connecting two sections of the road or are for the purpose of providing access to the road.

It would seem to be quite clear from the grants that an effort was made to comply with the bridge corporation article. No reference is made in either grant to any permission to construct a road. A bridge alone is referred to, and the grants from the commissioners contain express authority to collect tolls as is provided in section 5367, C. O. S. 1921.

It is set forth in the bill of complaint that this right to take tolls was granted to individuals who in turn assigned the same to a corporation, which constructed the bridge and which prior to the expiration of its charter conveyed the bridge together with the right to take tolls to complainants. The grant to the individuals undoubtedly from the allegations of the bill and the evidence introduced on the hearing was taken and held in trust for the corporation which they later formed on May 18, 1911. The right to take toll would, of course, never amount to anything unless the bridge was completed.

It is, of course, axiomatic that the boards of county commissioners' have no inherent powers and that the powers granted to them by the Legislature are to be strictly construed.

Counsel for the complainant in his brief and on the oral argument relies upon the case of Postal Bridge Co. v. State ex rel. Dabney, Attorney General, 139 Okl. 225, 282 P. 462, to sustain his contention that a franchise may be granted to an individual to own and operate a toll bridge in the state of Oklahoma, and that the decision is binding upon the federal courts construing a state statute. The case is not authority for this contention. In this case the De Luxe Bridge Company was granted a charter on the 14th day of January, 1920, amended November 29, 1920, as a toll bridge corporation to construct such bridge at Bridgeport in Blaine county, Okl. It obtained a franchise from the board of county commissioners of Blaine county authorizing it to collect tolls from such bridge. The De Luxe Bridge Company sold and assigned its franchise to operate the bridge to the Postal Bridge Company long prior to the expiration of its corporate charter. The Postal Bridge Company was not a corporation, but an express trust. The state instituted its suit to enjoin the Postal Bridge Company from operating the toll bridge and collecting tolls, alleging that said De Luxe Bridge Company was not authorized to own a franchise and to operate a toll bridge within the state of Oklahoma, and for that reason did not have any franchise or right that could be assigned or sold to the Postal Bridge Company, and that the Postal Bridge Company was unauthorized to operate said toll bridge. It was held that a corporation hav-

ing a franchise to operate a toll bridge could sell and assign such franchise to an express trust or an individual, and the corporate entity of such toll bridge corporation could not be collaterally attacked; that there is no inhibition to be found in the constitution and statutes of Oklahoma against a toll bridge corporation from selling its secondary franchise, subject to the conditions and requirements contained in said franchise. The case is not authority sustaining the power of county commissioners to grant a perpetual franchise to individuals to collect tolls upon a toll bridge built over the streams of the state.

It is provided in section 10104, C. O. S. 1921, that county commissioners may grant to individuals as well as corporations authority to construct bridges over a stream which constituted a state boundary line.

■ However, it will be observed from the sections referred to that the Legislature very clearly distinguished between bridges located wholly within the state and those over streams constituting boundaries. The bridge in question over the South Canadian river lies wholly within the state of Oklahoma, and the county commissioners of McClain and Cleveland counties were without authority to grant to Carter et al. a franchise to take toll, unless the grants were taken for the benefit of the bridge corporation which they immediately formed. This, in my opinion, was the case. This conclusion is emphasized still further by the fact that in each grant "Bridge Company" is referred to.

Counsel for complainants have referred to the case of Grove Bridge Co. v. State, 133 Okl. 115, 271 P. 846. The grant in this case was to individuals, as was permissible under the Arkansas law in force in the Indian Territory at the time of the grant.

In Gibson v. Rogers County, 75 Okl. 51, 181 P. 720, the plaintiff in error was proceeding under the wagon road incorporation article and not under the bridge incorporation article.

In my opinion, it is clear that the original grantees herein were endeavoring to proceed under the bridge incorporation article, preparatory to the formation of a corporation.

■ Having reached the conclusion that the franchise to take tolls has expired, it next becomes necessary to determine what becomes of a toll bridge upon the expiration of the franchise to take toll. This question has been passed on by the Supreme Court of Oklahoma in the case of Grove Bridge Co. et al. v. State ex rel., 133 Okl. 115, 271 P. 846, and Postal Bridge Co. v. State ex rel., 139 Okl. 225, 282 P. 462, which hold that the bridge then becomes the property of the state. It is quite clear from the authorities, generally, that upon the expiration of a toll franchise that the use of a bridge is free to the citizens of the state just as other public highways. Mr. Justice Brewer, while a member of the Supreme Court of Kansas, in the case of State ex rel. v. Lawrence Bridge Co., 22 Kan. 438, 463, stated the applicable rule as follows: "For I agree with the chief justice that the bridge is a permanent structure on the public highway, and under the authorities, when the franchise to take tolls ceases, the right of the public to use the bridge free from any burden of tolls attaches, without any right on the part of the builders to remove the structure and destroy the highway. The right to take tolls for a specified number of years was the consideration granted by the public to the defendants for the privilege of placing this improvement on the highway, and the former owners have now no more right to remove the bridge than the owners of a turnpike to tear up after the franchise to take tolls has ceased."

The opinion of the Chief Justice in the foregoing case is well worthy of consideration and shows clearly that such a conclusion works no hardships on the owners of the bridge who, as is true in the instant case, have very probably long since been repaid many times over the cost of the construction and maintenance of the structure.

See, also, Virginia Canon Toll Road Co. v. People, 22 Colo. 429, 45 P. 398, 37 L. R. A. 711; State ex rel. v. Scott County, etc., Road Co., 207 Mo. 54, 105 S. W. 752, 13 Ann. Cas. 656; Rockwith v. State Road Bridge Co., 145 Mich. 455, 108 N. W. 785; People ex rel. v. Anderson & U. Valley Road Co., 76 Cal. 190, 18 P. 308; Grand Rapids Bridge Co. v. Prange, 35 Mich. 404, 24 Am. Rep. 585.

Numerous cases to the same effect are referred to in the brief of the defendant in error in the case of Scott County Macadamized Road Co. v. Missouri ex rel., 215 U. S. 336–338, 30 S. Ct. 110, 54 L. Ed. 221.

I am of the opinion that where the bridge corporation article was endeavored to be followed that the board of county commissioners could not grant a toll franchise for more than twenty years. The grants involved herein read as follows: "That the grants herein made shall be perpetual, subject only

to such limitations as is by law now, or may hereafter, be provided."

This grant, of course, must be read in connection with the authority of the boards of county commissioners. In City of Okmulgee v. Okmulgee Gas Co., 140 Okl. 88, 282 P. 640, the Supreme Court of Oklahoma held that a perpetual franchise would violate the perpetuity section of the state Constitution.